MARSH INVESTMENT CORPORATION, Plaintiff,

v.

John A. LANGFORD, Pontchartrain State Bank, William M. Justice, Clerk of Court and Ex-Officio Recorder of Mortgages for the Parish of St. Charles, Crump London Underwriters, Inc., John A. Langford, Langford Land Company, Eunice K. Langford, Defendants.

Civ. A. No. 79–2020.

United States District Court, E. D. Louisiana.

July 30, 1980.

Moise S. Steeg, Jr., Robert M. Steeg, New Orleans, La., for plaintiff.

Marian Mayer Berkett, New Orleans, La., Alfred J. Morgan, Jr., New York City, for third party defendant Crump London.

Robert Lowe, Winnsboro, La., for defendant Pontchartrain State Bank.

Milton E. Brener, New Orleans, La., for defendants John Langford and Langford Land Co.

Don M. Richard, New Orleans, La., for third party defendant Eunice Langford.

MEMORANDUM OPINION

CASSIBRY, District Judge:

This matter was heard in chambers on July 18, 1980 on motion by Pontchartrain State Bank to alter, set aside, or amend judgment and was denied. The following reasons are assigned in support of my disposition:

The primary controversy involved Marsh Investment Corporation and Pontchartrain State Bank, both Louisiana corporations. Marsh brought suit in state court against the Bank to cancel two mortgages placed on its land in favor of the Bank on the grounds that the mortgages were fraudulently obtained. The Bank filed a third party action against its underwriter for indemnity. The Bank's claim was that if the mortgages were cancelled (rendering the underlying debt uncollectible as a practical matter), the insurance companies would have to pay off under their policies. The underwriter removed to federal court on the ground of diversity of citizenship in the third party demand.[1] *See* 28 U.S.C. §§ 1332(a)(1), 1441 (1976).

After extensive discovery, plaintiff brought a motion for summary judgment on the main demand, which I granted. I then certified the claim for final judgment under Rule 54(b). Fed.R.Civ.P. 54(b). The clerk entered final judgment on July 3, 1980. The Bank now asks me to vacate my judgment, arguing the court did not have subject matter jurisdiction over the case, and asserts that the case should be remanded to state court. *See* Fed.R.Civ.P. 59(e); 28 U.S.C. § 1447(c) (1976).

1. Is the motion timely?

The remand statute provides that the district court shall remand if it finds "at any time *before final judgment*" that the case was improvidently removed or the court lacks jurisdiction. 28 U.S.C. § 1447(c) (1976) (emphasis added). Third party defendants argue that because final judgment

---

1. The original named third party defendant was Crump London Underwriters, Inc., a Tennessee corporation. Later, the third party complaint was amended by stipulation to substitute the individual insurance companies, several British entities. The amendment did not destroy diversity or otherwise change the propriety of removal. *See* 28 U.S.C. §§ 1332(a)(2), 1441 (1976); *Twentieth Century-Fox Film Corp. v. Taylor*, 239 F.Supp. 913, 914 (S.D.N.Y.1965).

was entered, it is now not within my power to remand to state court—the Bank must present its motion to remand in the court of appeals.

Although this position is technical, it is not without support. In a recent case, Justice Rehnquist said:

[W]here after removal a case is tried on the merits without objection and the federal court enters judgment, the issue *in subsequent proceedings on appeal* is not whether the case was properly removed, but whether the federal district court would have had original jurisdiction of the case had it been filed in that court.

*Grubbs v. General Electric Credit Corp.*, 405 U.S. 699, 702, 92 S.Ct. 1344, 1347, 31 L.Ed.2d 612 (1972). The quoted phrase is certainly not dispositive because it was not the major import of what the Justice was discussing. Nevertheless, the meaning on the face of the statute is that final judgment deprives the district court of remand power.

On the other hand, the Fifth Circuit decision in *Live and Let Live, Inc. v. Carlsberg Mobile Home Properties, Ltd.*, 592 F.2d 846 (5th Cir. 1979) clouds the issue. In that case, a Florida plaintiff brought an action for breach of contract in a Florida state court. The California defendant removed to federal court on the ground of diversity. Just before trial, defendant, a partnership, sought remand on the ground that it had acquired local residents as partners, thus destroying diversity. The motion was denied. The case was tried to a jury that returned a verdict for plaintiff. Defendant then renewed its motion to remand. The court entered judgment on the jury's verdict but stayed execution of the judgment pending resolution of the motion.

The district court later concluded that diversity was destroyed, vacated its judgment, and remanded. The court of appeals affirmed. Among other things, it held that final judgment had not been entered within the meaning of section 1447(c) because the district court's judgment on the jury's ver-

dict was expressly conditional on the outcome of the remand motion. The appellate court stated, "The finality of a judgment must be determined from the circumstances under which it was entered." 592 F.2d at 848.

In this case, I ordered that final judgment be entered pursuant to Rule 54(b). Nevertheless, the Federal Rules allow a party to ask me to alter or amend the judgment within 10 days of its entry, Fed. R.Civ.P. 59(e), and the Bank did bring this motion in that time. It can be argued that even a final judgment is not "final" within the meaning of section 1447(c) until after the 10 day period.[2]

█ I believe that considering the circumstances under which this judgment was entered, as *Live and Let Live* compels, it was final within the meaning of section 1447(c). I ordered final judgment to be entered without condition, and, unlike *Live and Let Live*, a signed judgment was entered into the record by the clerk. *See* Fed.R.Civ.P. 58, 79(a) (judgment effective when the clerk enters it in the civil docket). For all intents and purposes, I was waiting only for a notice of appeal on behalf of the Bank. The language of section 1447(c) would be virtually meaningless unless *Live and Let Live* is fairly narrowly limited to its facts. The Bank's motion to vacate, alter, or amend—in effect a motion to remand for lack of subject matter jurisdiction—is too late to be presented in the district court. On the other hand, I will reach the merits of the jurisdiction question to avoid needless delay if the court of appeals disagrees with my conclusion.

2. Was the case properly removed?

This question has generated controversy out of proportion to its narrowness. The removal statute provides:

Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-remova-

**2.** By way of contrast, Rule 60 also allows relief from a "final" judgment, but Rule 60(b) expressly provides that "A motion under this sub-

division (b) does not affect the finality of a judgment or suspend its operation." Fed.R. Civ.P. 60(b).

ble claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

28 U.S.C. § 1441(c) (1976). This case does not present the usual section 1441(c) problem; in most cases the plaintiff joins several different claims or causes of action, some of which may be removable by defendant and some not removable. Here the question is the removability of a third party demand by the third party defendant.

Professor Moore's position is that no counterclaim, cross-claim, or third party claim should be removable. 1A Moore's Federal Practice ¶ 0.157[7], at 115 n.8 and ¶ 0.167[10] (2d ed. 1979). Professors Wright, Miller, and Cooper apparently agree, with reservations. 14 C. Wright, A.

Miller & E. Cooper, Federal Practice and Procedure § 3724, at 643–46 (1976). Some cases allow removal, others do not.[3]

Until recently, the Fifth Circuit had considered closely-related issues, but had not definitively ruled on point.[4] Within the last week, however, the court ruled in *Carl Heck Engineers, Inc. v. Lafourche Parish Police Jury*, 622 F.2d 133 (5th Cir. 1980). In the *Heck* case, plaintiff contracted with defendant to provide engineering services on a road construction project. The contract provided for liquidated damages in the event of delay in project completion. When the original general contractor abandoned the project, the bonding company for the project, Maryland Casualty Company, arranged for a new contractor; and Lafourche and Maryland agreed in a relet contract to amend and supplement the original construction contract. The contract

---

3. *Compare, e. g., Ted Lokey Real Estate Co. v. Gentry*, 336 F.Supp. 741 (N.D.Tex.1972); *Coleman v. A & D Machinery Co.*, 298 F.Supp. 234 (E.D.Cal.1969) *and Wayrynen Funeral Home, Inc. v. J. G. Link & Co.*, 279 F.Supp. 803 (D.Mont.1968) *with Lowe's of Montgomery, Inc. v. Smith*, 432 F.Supp. 1008 (M.D.Ala.1977); *Holloway v. Gamble-Skogmo, Inc.*, 274 F.Supp. 321 (N.D.Ill.1967); *Burlingham, Underwood, Barron, Wright & White v. Luckenbach Steamship Co.*, 208 F.Supp. 544 (S.D.N.Y.1962) *and Sequoyah Feed & Supply Co. v. Robinson*, 101 F.Supp. 680 (W.D.Ark.1951).

4. Two cases in the court of appeals skirted the issue. In *Central of Georgia Railway Co. v. Riegel Textile Corp.*, 426 F.2d 935 (5th Cir. 1970), the court considered the removability of a third party claim that had already been severed by a state court. Plaintiff, an individual, brought an FELA claim against the railroad, his employer, in an Alabama state court. The railroad filed a third party complaint against Riegel Textile claiming indemnity under the terms of a track agreement. Riegel removed the case to federal court alleging diversity in the third party suit. The district court remanded on the ground that the third party complaint was not a separate and independent claim as required by section 1441(c). That ruling was unreviewable at the time. 28 U.S.C. § 1447(d) (1976).

After the remand, the state court on plaintiff's motion severed the two actions for trial. Riegel again removed to federal court. The district court again remanded the FELA claim but it retained the third party claim for indemnity. The Fifth Circuit affirmed. The court of appeals specifically noted the division in the cases on the removability of joined third party

claims, but declined to reach the issue. 426 F.2d at 937 & n.6. Rather, noting that the state court had severed the two actions, it held that the third party defendant was now as much a "defendant" as if the third party plaintiff had brought its suit as an original independent action. It thus allowed removal under the terms of 28 U.S.C. section 1441(a).

In the second of the cases, *Gamble v. Central of Georgia Railway Co.*, 486 F.2d 781 (5th Cir. 1973), the Fifth Circuit again faced an FELA case, but in a different context. Plaintiff, an individual, brought an FELA case in state court in Alabama. The railroad brought a third party complaint against the McGregor Printing Company on the basis of a "close clearance" agreement. McGregor removed on the ground of diversity of citizenship in the third party suit. The district court after a lengthy discussion of the issue held that a third party defendant had a right to remove under section 1441(c), denied the motion to remand the third party claim, and in its discretion, see 28 U.S.C. § 1441(c) (1976), denied the motion to remand the FELA claim.

The Fifth Circuit reversed but again it did not reach the section 1441(c) problem. Treating only the main demand, the court of appeals ruled that 28 U.S.C. section 1445(a), which prohibits removal of FELA cases, takes precedence over the general removal statute. The court concluded, "The court below was without jurisdiction to hear [the FELA] case, and should have granted the motion for remand of the entire action or alternatively should have severed the FELA suit and remanded it.", 486 F.2d at 785.

**348**

was completed, but on the new timetable provided for in the takeover agreement.

Heck thereupon filed suit in a Louisiana state court to recover the liquidated damages provided for in its separate contract with Lafourche. Lafourche filed a third party claim against Maryland contending that Maryland was required to defend Lafourche and hold it harmless from Heck's claim based on a clause in the relet contract. Maryland removed the case to federal court on the basis of diversity of citizenship in the third party demand.

Once in federal court, Maryland moved to sever the third party action from the primary suit and to remand the main action to state court. Lafourche moved to remand the entire case to state court. The district court granted Maryland's motions. It held that third party defendants have a right to remove under section 1441(c) and that the particular case was properly removed because the third party claim was "separate and independent" within the meaning of the statute. In its discretion it remanded the original claim.

The Fifth Circuit affirmed. The court held that third party defendants may remove when the third party complaint states a separate and independent controversy from the main cause of action. The court ruled,

> Here, the claim for indemnity by Lafourche against Maryland presents a real controversy, not unrelated to the main claim, but sufficiently independent of it that a judgment in an action between those two parties alone can be properly rendered. Such actions can be and often are brought in a separate suit from that filed by the original plaintiff in the main claim. If filed in the original suit, therefore, a claim essentially seeking indemnity should be considered separate and independent. *See Bond v. Doig*, 433 F.Supp. 243, 249 (D.N.J.1977); *Wayrynen Funeral Home, Inc., supra*, 279 F.Supp. at 806; *Rafferty v. Frock*, 135 F.Supp. 292, 293 (D.Md.1955).

At 136.

■ After *Heck*, it is clear that in this circuit third party defendants have the right to remove separate and independent claims. Because the Bank's third party demand is for indemnity, *Heck* also seems to confirm that it is, in fact, a separate and independent claim. Some courts have found certain third party claims for indemnity are not separate and independent, however. E. g., *Croy v. Buckeye International, Inc.*, 483 F.Supp. 402 (D.Md.1979); *Coleman v. A & D Machinery Co.*, 298 F.Supp. 234 (E.D.Cal.1969); *Holloway v. Gamble-Skogmo, Inc.*, 274 F.Supp. 321 (N.D.Ill.1967).

The *Holloway* plaintiffs sued Gamble-Skogmo, Inc. for personal injuries allegedly caused by a defective automobile tire sold by the company to one of the plaintiffs. Gamble-Skogmo brought a third party complaint against Uniroyal alleging negligence in the manufacture of the tire and seeking indemnity. The court held that the third party complaint was dependent on the main action, not separate and independent.

In the *Croy* case, plaintiffs, an infant and his mother, sued Peterson Baby Products alleging injury to the child from a fire in his playpen. Defendant brought a third party complaint against several manufacturing companies, including House of Foam, Inc. Subsequently, House of Foam named Firestone Tire & Rubber Co., trading as Corry Foam Products Co., as a fourth party defendant. The court held that House of Foam's claim against Firestone was not separate and independent, "but rather one for indemnification and/or contribution. [citing *Holloway*]." 483 F.Supp. at 404.

The plaintiff in *Coleman* sued A & D Machinery for breach of warranty in the sale of a construction machine. A & D third partied Garwood Industries, from whom it had purchased the machine, for indemnity. The court reasoned:

> In the sense that each action arises out of a separate sales transaction and is based on a separate contract of sale, the actions are "separate and independent." But in the sense that both actions resulted from the same defect to the same machine, they are not independent.

Which is the correct characterization? Again the authorities are split. Some cases have flatly held that indemnity actions are not independent, while others have characterized claims that essentially sought indemnity as separate and independent. The only Supreme Court case to examine the meaning of "separate and independent" under this statute did not involve a third party defendant. The defendant who had removed was one of several defendants in the original action. The Court concluded:

> * * * that where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c). [*American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 540, 95 L.Ed. 702 (1951).]

That language convinces me that the proper focus should be the injury which occurred and not the transactions which created legal liability. Applying that test to the instant case, the same defect in the same machine gave rise to the liability of both original defendant and cross-defendant, and the claims against each are therefore not separate and independent under the statute.

298 F.Supp. at 237 (footnotes omitted).

In contrast to the above cases are the cases cited by the Fifth Circuit in *Heck*. In *Rafferty v. Frock*, 135 F.Supp. 292 (D.Md. 1955), the court held that a third party action for indemnity by the owner of a car against his insurance company based on an automobile liability policy was separate and independent from the tort action brought by the injured plaintiff against the insured owner. The main action, the court reasoned, involved questions of negligence, while the third party suit turned on the interpretation of a contract. The third party claim held separate and independent in *Bond v. Doig*, 433 F.Supp. 243 (D.N.J.1977), similarly, was by a yacht owner against his insurance company for denial of coverage and refusal to defend the main action. The original suit was brought by plaintiffs for injuries sustained when the yacht capsized during their tour of a lake. The original cause of action in *Wayrynen Funeral Home, Inc. v. J. G. Link & Co.*, 279 F.Supp. 803 (D.Mont.1968) alleged negligence in design and construction of a mortuary building and breach of warranty of fitness for its intended purpose. But, again, the third party complaint by some of the defendants against Continental Casualty Company sought a declaratory judgment because the insurance company had denied liability under its policy and refused to defend. The court held that the third party claim was distinct from the original claim. In each of the three cases, the respective courts held that diversity in the indemnity claim made the entire case removable under section 1441(c).

Although unarticulated, the line in the indemnity cases seems fairly well-defined. The third party claims in *Holloway, Croy*, and *Coleman* each sought indemnity on a theory of "active/passive negligence". The defendants who were vicariously liable in law to the plaintiffs sued the parties who they alleged were the actively negligent tortfeasors. *Accord, Manternach v. Jones County Farm Service Co.*, 156 F.Supp. 574 (N.D.Iowa 1957); *Marshall v. Navco, Inc.*, 152 F.Supp. 50 (S.D.Tex.1957); *see Rager v. Crampes*, 223 F.Supp. 346 (W.D.Ky.1963). In each of the cases, as in *Coleman*, there was but a single wrong to plaintiff for which relief was sought. *See American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 14, 71 S.Ct. 534, 540, 95 L.Ed. 702 (1951).

The third party defendants in *Rafferty, Bond*, and *Wayrynen Funeral Home*, on the other hand, had nothing to do with causing the respective plaintiffs' injuries. The third party claims for indemnity in those cases were brought by the alleged tortfeasors against their insurance companies based on insurance policies that involved only the third parties *inter se*. Like the claim based on the relet contract in the *Heck* case, the insurance policy claims, although not unrelated to the main claims, were sufficiently independent of them that a judgment in an action between the tortfeasor and the insurance company alone

could be properly rendered. *See Heck,* at 135. Other cases involving separate agreements between the tortfeasor and an independent party reached the same result. *E. g., Hartford Accident & Indemnity Co. v. Shaw,* 273 F.2d 133, 135 n.2 (8th Cir. 1959) (insurance policy); *Gamble v. Central of Georgia Railway Co.,* 356 F.Supp. 324 (M.D. Ala.) *rev'd on other grounds,* 486 F.2d 781 (5th Cir. 1973) ("close clearance" agreement); *McMahon v. City of Troy,* 122 F.Supp. 555 (N.D.N.Y.1954) (indemnity agreement); *see Central of Georgia Railway Co. v. Riegel Textile Corp.,* 426 F.2d 935 (5th Cir. 1970) (track agreement). *Contra, Harper v. Sonnabend,* 182 F.Supp. 594 (S.D.N.Y.1960) (broker's agreement).

Marsh's original claim in the instant case was to cancel allegedly fraudulent mortgages. The Bank's third party claim seeking indemnity against the underwriters is on the basis of a separate policy of insurance with them. I already implicitly recognized the severability of the two claims when I certified the primary controversy for final judgment under Rule 54(b). Minute entry, filed June 26, 1980. The authorities confirm my view that the Bank's cause of action is separate and independent within the meaning of section 1441(c), and the entire case was properly removed to federal court. 28 U.S.C. § 1441(c) (1976); *Heck,* 622 F.2d 133 (5th Cir. 1980).

3. Should I vacate the judgment and remand the main action?

■ In virtually every case that a court has held that section 1441(c) was properly invoked to remove a case on the basis of a third party claim, the court has nevertheless

exercised its discretion to remand the main action to state court.[5] *E. g., Heck,* 622 F.2d 133, at 134. *Ted Lokey Real Estate Co. v. Gentry,* 336 F.Supp. 741, 743 (N.D.Tex. 1972). *Contra Gamble v. Central of Georgia Railway Co.,* 356 F.Supp. 324 (M.D.Ala.), *rev'd,* 486 F.2d 781 (5th Cir. 1973) (held on appeal: no discretion; FELA claim non-removable; claim must be remanded alone or with entire case). The Fifth Circuit in *Heck* specifically approved this practice so that removal would not defeat the plaintiff's choice of forum. At 135.

I find no indication in the cases, however, that any of them had progressed quite so far as this case. On the contrary, the cases seem to indicate that generally a motion to remand closely follows removal. *E. g., id.* at 134. The parties here were content instead to submit to my jurisdiction and fully argue and brief plaintiff's motion for summary judgment that proved to be dispositive. I spent an inordinate amount of time considering that motion, and it would be an unseemly waste of judicial resources to declare the result void and force a state court to go through the same ordeal.

Moreover, it is not plaintiff who complains that its choice of forum was frustrated by third party defendants' removal.[6] It is the defendant Bank, after losing on the merits, that endeavors to wipe the slate clean and start all over again. The result will only be needless delay, because the statute does give me the discretion not to remand the main action and to "determine all issues therein," which I have already done. If the Bank had asked for remand in the first instance, I undoubtedly would

---

**5.** Section 1441(c) provides in pertinent part, "the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction." 28 U.S.C. § 1441(c) (1976).

**6.** The commentators and the cases make much of preserving the plaintiff's "choice" of forum by denying removal entirely or remanding the main action. *See* 1A Moore's Federal Practice ¶ 0.167[10], at 415 & n.13 (2d ed. 1979); 14 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3724 at 645–46 (1976); *Heck,* 622 F.2d 133, at 135. In many cases, however,

the plaintiff has no choice of forum because it is a resident of the same state as its adversary and no other basis of federal jurisdiction exists. *E. g., Wayrynen Funeral Home, Inc. v. J. G. Link & Co.,* 279 F.Supp. 803 (D.Mont.1968). It may well be, as appears in this case, that some plaintiffs prefer a federal forum even though not initially entitled to it, and once there will not protest. *But see id.* at 804. If there is any evidence of collusion, though, the court might take a harder look at the propriety of removal. *See Heck,* 622 F.2d 133, at 134 n.1 (E.D.La. 1978), *aff'd,* 622 F.2d 133 (5th Cir. 1980).

have granted the motion. At this late hour, I believe this is the rare case in which my discretion is more properly exercised to keep the main action.

The motion by Pontchartrain State Bank to alter, amend, or set aside is, therefore, denied.