John HAYDUK,
Plaintiff/Counterdefendant,

v.

UNITED PARCEL SERVICE, INC., an Ohio and New York Corporation, Bill Cox and Edwin Gill, Defendants/Counterplaintiffs/Third–Party Plaintiffs,

v.

The INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS, Third–Party Defendant.

No. 95–2884–CIV.

United States District Court,
S.D. Florida.

April 25, 1996.

Herman J. Russomanno, Floyd Pearson Richman Greer Weil Brumbaugh & Russomanno PA, Miami, FL, for Plaintiff/Counter-defendant.

Murray Hudson, Hogg Allen Norton & Blue PA, Coral Gables, FL, for Defendants United Parcel Service, Bill Cox and Edwin Gill.

Christy Hoffman, Legal Department, Washington, DC, March Richard, Coral Gables, FL, for Third Party Defendant International Brotherhood of Teamsters, Etc.

***ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR REMAND; AND DENYING DEFENDANTS' MOTION TO ASSERT JURISDICTION OVER THE ENTIRETY OR IN THE ALTERNATIVE REMAND ACTION IN ITS ENTIRETY***

ATKINS, Senior District Judge.

THIS MATTER is before the Court on two (2) motions. (1) Plaintiff's *Motion to Remand;* and (2) *Defendants/Counter-Plaintiffs' Motion to Assert Jurisdiction over Entire Case, or in the Alternative to Remand Action in its Entirety.* After careful review of the motions, responses, replies and applicable law, the Court has made the following determinations.

### FACTS

This case revolves around the arrest of John Hayduk, Plaintiff, on February 7, 1994. At that time, Hayduk was an employee of United Parcel Service, Inc. ("UPS"), engaged as a feeder-driver. On the day in question, Hayduk was to drop off a trailer containing customer packages at UPS' facility in Port Charlotte. After driving from his home facility in Hialeah, Hayduk arrived at Port Charlotte only to find the entrance blocked by two picketing members of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers, ("Teamsters"), the same union to which Hayduk belonged. Hayduk refused to cross the picket-line and instead drove to a nearby parking lot and disconnected the trailer from his tractor.

After communication with his supervisors at Hialeah, Hayduk was ordered to cross the picket-line, and drop off the trailer—he refused. Soon thereafter, Hayduk was met in the parking lot by Robert Parker, a supervisor at the Port Charlotte facility. Parker ordered Hayduk to turn over the keys to his tractor—Hayduk agreed provided he was guaranteed transportation back to Hialeah. Parker refused to make any such guarantee.

Hayduk then contacted representatives of Teamsters who informed him, allegedly in conformity with the collective bargaining agreement ("CBA") between Teamsters and UPS, that he should not turn over the keys to his tractor, and should just "get in the truck and drive back to Hialeah." Acting on this advice, Hayduk entered the tractor and left for Hialeah, leaving the trailer in the parking lot. At some point, somebody from UPS called the police and reported the truck stolen. On his way back to Hialeah, Hayduk was pulled over, arrested and eventually

charged. A report of the arrest appeared in the paper, but the charges were eventually dropped.

### The Pleadings

As a result of this situation, Hayduk filed suit on or about July 7, 1995 in State court against UPS, alleging malicious prosecution, false imprisonment, defamation, intentional infliction of emotional distress and negligence. In its answer to the complaint, on November 20, 1995, UPS included counterclaims and a third-party complaint against Teamsters. In its counterclaims, UPS alleged causes of action against Hayduk for breach of duty of loyalty and civil conspiracy (with Teamsters). In the third-party complaint, UPS alleged claims for intentional interference with business relationships (based on alleged violations of a temporary restraining order ("TRO")), contribution, legal subrogation and civil conspiracy (with Hayduk). On December 27, 1995, Teamsters filed a Notice of Removal with this Court, alleging that this Court has jurisdiction under 28 U.S.C. § 1331, and that the case is removable pursuant to 28 U.S.C. §§ 1441(a) & (b).

Hayduk opposed Teamster's removal and, on January 25, 1996, filed a *Motion to Remand.* The motion put forth two main arguments. First, that a third-party defendant may not remove a case from State court under §§ 1441(a) or (b). Second, that failure to note § 1441(c) as a basis for removal precludes Teamsters from now relying on that section, and that even if that section were pled, it is not applicable in this instance.

### THIRD–PARTY REMOVAL UNDER 28 U.S.C. § 1441 IN GENERAL

■ The right of a third-party defendant to remove a case from State court has been a source of tremendous conflict among the different courts that have considered the question. The vast majority of courts that have considered whether third-party defendants have the right to remove a case have determined that no such right exists. "Typically,

removal is reserved for the original defendant. Under [§ 1441] removal by third party defendants is generally not permitted." *Reese v. South Florida Water Management Dist.,* 853 F.Supp. 413, 414 (S.D.Fla.1994) (King, J.) (also holding that "the Court is inclined to follow the majority by holding that third party removal is not permitted under 28 U.S.C. § 1441"). *See e.g., Lewis v. Windsor Door Co.,* 926 F.2d 729 (8th Cir. 1991); *Thomas v. Shelton,* 740 F.2d 478 (7th Cir.1984); *Andrews v. Electric Motor Systems, Inc.,* 767 F.Supp. 853 (S.D.Ohio 1991); *Harris v. G.C. Services Corp.,* 651 F.Supp. 1417, 1418–19 (S.D.N.Y.1987) ("The absence of federal jurisdiction over the main claim is not remedied by the commencement of an ancillary third-party claim as to which federal jurisdiction would exist if asserted in an independent action"); *Friddle v. Hardee's Food Systems, Inc.,* 534 F.Supp. 148 (W.D.Ark.1981); *Luebbe. v. Presbyterian Hospital,* 526 F.Supp. 1162 (S.D.N.Y.1981). *See also* C. Wright, A. Miller, E. Cooper, *Federal Practice and Procedure,* §§ 3724, 3731 (2d ed. 1985 & Supp.1995). *See also Mignogna v. Sair Aviation, Inc.,* 679 F.Supp. 184, 187–88 (N.D.N.Y.1988) (holding that third-party removal is proper, but citing numerous cases in opposition).

■ However, binding cases in this circuit have held that a third-party defendant is not barred from pursuing a claim under certain prescribed circumstances. *See Carl Heck Engineers v. Lafourche Parish Police,* 622 F.2d 133 (5th Cir.1980); *Central of Georgia Ry. Co. v. Riegel Textile Corp.,* 426 F.2d 935 (5th Cir.1970).[1] This Court, considering itself bound by these decisions of the Fifth Circuit, must rule that third party defendants may remove cases in some circumstances. What remains, is to determine whether those circumstances exist here.

### THIRD PARTY REMOVAL UNDER 28 U.S.C. §§ 1441(a), (b)

Teamsters, in its notice of removal, has relied explicitly on 28 U.S.C. §§ 1441(a), (b)

---

1. The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

as the proper grounds for removal. However, applicable caselaw demonstrates, without a shadow of a doubt, that neither of these bases is properly relied upon in this case.

Section 1441(a) states, in relevant part:

(a) any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district embracing the place where such action is pending....

Nearly every court that has considered the question whether third-parties may remove under § 1441(a) has determined that they may not. The court in *Persoff, M.D. v. Aran*, 792 F.Supp. 803, 804 (S.D.Fla.1992) found that most:

[F]ederal courts and commentators ... have found that third-party defendants may not remove, primarily because this Court believes that a third party defendant is not a "defendant" within the meaning of [§ 1441(a)], and thus is never capable of removing [under that provision].

*See also Reese,* 853 F.Supp. at 413. This Court has been able to find only one case granting a third-party defendant the right to remove under § 1441(a).

■ The District Court for the Eastern District of Louisiana, in *National Fishing Tools, Inc. v. Galaxy Wireline, Inc.,* 1989 WL 132802 (E.D.La.1989), specifically declared that third-party defendants have the right to remove under § 1441(a). The court, relying on the Fifth Circuit's opinion in *Carl Heck,* 622 F.2d at 133, held "if a third-party defendant can remove the entire action, including a nonremovable claim, under 1441(c) [citations omitted] it seems that third-party defendant may remove an entire action involving two removable claims under 1441(a)." *Id.* at *2. Such reliance on *Carl Heck* is curious at best, given that *Carl Heck* dealt exclusively with the right of third-party defendants to remove pursuant to § 1441(c), and at no point questioned the otherwise universal acceptance that § 1441(a) is restricted merely to the original defendant or defendants as joined by the plaintiff. This Court finds no reason to disagree with the multitude of courts that have previously determined that § 1441(a) is not a proper removal provision for a third party defendant.

The Court's determination on § 1441(a) is given further support by Teamsters' response to Hayduk's motion to remand, where reliance on § 1441(a) seems to have been dropped. This is not the case, however, with § 1441(b), where Teamsters attempts to argue that third-party defendants may remove under that section. In support, counsel for Teamsters cites, somewhat inexplicably, *Motor Vehicle Casualty Company v. Russian River County Sanitation Dist.,* 538 F.Supp. 488 (D.C.Cal.1981). That case dealt exclusively with § 1441(c) and whether or not *that* section's scope is limited only to defendants joined by the original plaintiff. Indeed, the court's holding in *Russian River* explains under what context it considered the right of third-party defendants to remove:

[T]he court holds that if the third-party complaint states a separate and independent claim, which if sued upon alone could have been removed to federal court, there should be no bar to removal. *Id.* at 493.

It is difficult to imagine clearer language to demonstrate that the court was only considering the propriety of third-party removal in the context of § 1441(c).

Upon independent review, this Court has been unable to find a single instance where a court has upheld removal under § 1441(b) by a third-party defendant, whereas many have been found in opposition. For instance, the *Persoff* court held, unequivocally, that third-party defendants may not remove under § 1441(a) or (b). Indeed, the court in *Persoff* expressed its unequivocal belief that § 1441 was an improper vehicle for removal under *any* circumstance, and that were it not for the decision in *Carl Heck,* removal would have been disallowed. *Persoff,* 792 F.Supp. at 804. The fact that the court did not cite section (b) specifically, can in no way be fairly interpreted as meaning that it was not considered.

Further, in *Radio Shack Franchise Dep't v. Williams,* 804 F.Supp. 151 (D.Kan.1992), the court specifically considered the propriety of third-party removal under § 1441(b). Counsel for Teamsters has argued that *Ra-*

*dio Shack* did not deal with third-party removal, but that assertion is mistaken.

At the very least, the court in *Radio Shack* made two specific statements which militate against Teamsters' reading that "there is no reference to a third-party defendant under 28 U.S.C. § 1441(b) anywhere in the case." *Teamsters' Response to Motion to Remand,* at p. 6. First, the court held that "[t]he only section conceivably allowing removal by a third-party defendant is [§ 1441(c) ]." *Id.* at 152. Secondly, the court ultimately held that "a third-party claim can never be the basis of removal." *Id.* at 153. It is difficult to see how counsel for Teamsters can argue that this case never considered § 1441(b),[2] or cannot be cited for the proposition that § 1441(b) is foreclosed to third-party defendants.

■ Although this Court is of the opinion that § 1441(b) is not available to third-party defendants, even if it were, a cursory review of the provision shows that it is not available to Teamsters in this case. According to section 1441(b):

> Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship of the parties.

■ Every court to have considered applications of § 1441(b) has included a simple prerequisite to its use—*all defendants must join in removal.* *See Tri–Cities Newspapers, Inc. v. Tri–Cities Printing Pressmen & Assistants' Local 349,* 427 F.2d 325, 327 (5th Cir.1970); *P.P. Farmers' Elevator Company v. Farmers Elevator Mutual Insurance Company,* 395 F.2d 546, 547–8 (7th Cir.1968); *Leonard v. Kern,* 651 F.Supp. 263 (S.D.Fla. 1986); *Miami Herald Publishing Co. v. Ferre,* 606 F.Supp. 122 (S.D.Fla.1984); *Crawford v. Fargo Manufacturing Co.,* 341 F.Supp. 762 (M.D.Fla.1972). Failure to join, or else explain why other defendants have not joined in the removal is fatal to the petition, and requires remand.

In this case, UPS' third-party complaint names both Teamsters and Hayduk as defendants to its various claims. At no time has Teamsters explained why Hayduk failed to join in its removal petition, and to this date, Hayduk has not joined. In fact, the instant motion to remand was filed by Hayduk, making clear that he does not support removal. As such, even if § 1441(b) could be conceived as applicable to third-party defendants, it is not so in this case.

Given that Teamsters may not remove under § 1441(a) or (b), it would seem that removal was improvident, and therefore remand is necessary. However, in its response

**2.** This Court must admit that it has some hesitation in placing much weight on the decision in *Radio Shack,* 804 F.Supp. at 151. In that case, Radio Shack brought suit against a defendant, Wayne Williams, on a promissory note held by Radio Shack. Williams' answer contained a counterclaim/third-party complaint which alleged RICO, 18 U.S.C. § 1961 *et al.,* violations on the part of Radio Shack and a number of added third parties. *Id.* at 152. According to the court, "[t]he third party defendants then removed the case to this court." *Id.*

The first real note of confusion can be seen in footnote # 1, where the court stated that "for the sake of brevity," it would refer to all third-party defendants and Radio · Shack, merely as third-party defendants, even though Radio Shack was the original sole plaintiff and a Counterdefendant, on the assumption that "is not necessary to make that distinction." *Id.* at 152 n. 1.

However, soon after declaring that the distinction was unimportant, the Court then offered the following:

> As an initial matter, the court notes that Radio Shack contends the defendant's RICO claims

are subject to the court's original jurisdiction as required by [§ 1441(b) ], implying that section would permit removal. This section has not been construed to apply to a counterclaim filed by the defendant. [citations omitted] Rather, the claim stating a federal question must be apparent on the face of the plaintiff's complaint. *Id.*

Considering the court's earlier declaration that the case was removed by third-party defendants, it seems that the reference to Radio Shack must have been in its capacity as a third-party defendant (although this Court is not sure how that is possible given only the existence of only one counterclaim/third-party complaint). Given this assumption, the court must have meant to include the concept of a third-party complaint when it mentioned only a counterclaim.

Given this reading, it seems that the court in *Radio Shack* did specifically consider the possibility of third-party removal based on a third-party complaint under § 1441(b), and rejected that possibility.

to Hayduk's motion to remand, Teamsters has urged this Court to consider whether it may remove under § 1441(c), a basis not previously alleged. In support of its request, Teamsters has made two arguments.

■ First, Teamsters alleges that its reference to 28 U.S.C. § 1331 in its notice of removal should be considered as an implicit reference to § 1441(c). According to Teamsters, since § 1331 is only referenced in § 1441(c), then "a reference to that section by definition includes subsection (c)."

A reading of the notice of removal rejects such a claim. According to the notice, and the portion where § 1331 was discussed:

> The action is a civil action in which this Court has original jurisdiction under 28 U.S.C. § 1331 and this cause is removable to the united States District Court pursuant to 28 U.S.C. § 1441(a), (b) because it involves a federal question.

It is obvious that Teamster's cited § 1331 only in relation to its claim of removability under § 1441(a) & (b). The notice of removal contained no reference to § 1441(c) or its requirement that any claim removed under it must be "separate and independent" from other non-removable claims. The reference to § 1331 was clearly not intended to refer to § 1441(c). Indeed, a reference to § 1331 is entirely appropriate in relation to § 1441(b), as that section necessarily implicates the Court's federal question jurisdiction for removal of State claims.

■ Teamsters has requested, in the event the Court rejects the incorporation by reference argument, that it be allowed to amend the notice of removal to include removal under § 1441(c). In considering whether amendment is allowed, the Court is conscious of the duty that "the removal statute should be construed narrowly, with any doubt being resolved against removal and in favor of remand." *Aran*, 792 F.Supp. at 805 (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941)). The Court is also aware that removal is only allowed where "the statutory prerequisites are met." *Herman Schamisso, PVBA v. Menelli, Inc.*, 657 F.Supp. 63, 65

(S.D.Fla.1986), and these prerequisites are also to be strictly construed.

The statutory prerequisites for determining the legitimacy of a removal petition are found at § 1446. According to § 1446, the defendant has 30 days from receipt of the complaint to file a notice of removal. During those 30 days, a notice of removal may freely be amended. 28 U.S.C. § 1446(b). *See also Wormley v. Southern Pacific Transp. Co.*, 863 F.Supp. 382 (E.D.Tex.1994). Teamsters did remove within the thirty day period.

■ After that period, courts have generally held that amendments may only be allowed to cure defective allegations of jurisdiction not to add new jurisdictional allegations, and may not be used to cure procedural defects. *See* 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts"). *See also Armada Coal Export, Inc. v. Interbulk, Ltd.*, 726 F.2d 1566 (11th Cir.1984); *Tech Hills II Associates v. Phoenix Home Life Mut. Ins. Co.*, 5 F.3d 963 (6th Cir.1993); *Hendrix v. New Amsterdam Casualty Company*, 390 F.2d 299 (10th Cir.1968); *CBS Inc. v. Snyder*, 762 F.Supp. 71 (S.D.N.Y.1991). Certain courts have argued that removal petitions should be treated the same as any other pleading, *Gafford v. General Electric Co.*, 997 F.2d 150 (6th Cir.1993); *Rachel v. State of Georgia*, 342 F.2d 336 (5th Cir. 1965), *aff'd* 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966); *Stanley Electric Contractors, Inc. v. Darin & Armstrong Co.*, 486 F.Supp. 769 (E.D.Ky.1980), and afforded a liberal construction. Under above-cited former Fifth Circuit precedent, this Court is bound to give a liberal construction to any notice of removal, while still maintaining a strict reading of the removal statute.

More than 30 days have passed since Teamsters' receipt of the complaint. In this case, however, the amendment sought is of neither a procedural nor a jurisdictional nature. Instead, it has generally been held that failure to plead a specific provision of the removal statute is merely a technical amendment, and so long as sufficient facts were pled in the original petition to support

the new section, the amendment should be allowed. *Willingham v. Morgan*, 395 U.S. 402, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969); *Rachel*, 342 F.2d at 336; *Wormley*, 863 F.Supp. at 385 ("While it is the usual practice to cite the section ... under which an action is removed, failure to cite the proper section in a petition for removal is not a fatal defect where an adequate basis of removal is set forth"); *Ryan v. Dow Chemical Co.*, 781 F.Supp. 934 (E.D.N.Y.1992); *DiAntonio v. Pennsylvania State University*, 455 F.Supp. 510 (M.D.Pa.1978); *Bennett Construction Co. Inc. v. Allen Gardens, Inc.*, 433 F.Supp. 825 (W.D.Mo.1977); *Harlem River Produce Co. v. Aetna Cas. & Sur. Co.*, 257 F.Supp. 160, 164 (S.D.N.Y.1965) ("Failure to cite the section under which removal is sought is not a fatal defect, and at most is a technical defect where an adequate factual basis for removal is set forth").

▆▆▆▆ This Court is in agreement with the authorities cited above. According to § 1446, the notice of removal need only contain a short and plain statement of facts supporting removal. There is no requirement that specific provisions of the statute be cited. All that need be shown is that sufficient facts were pled in the original notice to support a finding of removability under the added provision. As such, courts have generally held that defendants be allowed to amend their notice of removal to include specific provisions of the removal statute previously omitted.

In this case, Teamsters notice of removal has explicitly laid out allegations which support a finding of a federal question that is separate and independent from the non-removable State law claims. Specifically, Teamsters has alleged the following facts in support of its notice of removal:

1. UPS' complaint arises out of a labor strike initiated by Teamsters. *Teamsters' Notice of Removal* ¶ 7.

2. UPS' complaint seeks damages against Teamsters for alleged violations of a temporary restraining order issued by the district court for the District of Columbia. *Id.*

3. The violation of the TRO is the alleged basis for the events surrounding the arrest of Hayduk. *Id.*

4. The sole factual involvement of Teamsters in the cause of action is its alleged violation of the TRO. *Id.*

▆▆▆▆ These facts, and many others, provide an adequate jurisdictional basis to support an initial finding that § 1441(c) may be appropriate. A federal question has been alleged, thus satisfying the prerequisite of this Court's jurisdiction, and enough facts have been alleged, if they appear on UPS' complaint, to support a tentative finding of separate and independent, enough to justify at least reliance on § 1441(c). Given this, the Court finds that amendment is warranted, and that Teamsters may legitimately rely on § 1441(c) for removal.

## THIRD–PARTY REMOVAL UNDER § 1441(c)

Turning now to § 1441(c), the first question that must be answered is whether a third-party defendant may rely on that section for removal. According to § 1441(c):

Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion may remand all matters in which State law predominates.

As was stated earlier, most courts that have considered the issue have determined, as part of their overall conclusion that third-party defendants may never remove, that § 1441(c) is unavailable to third-party defendants. This Court, however, is bound by the Fifth Circuit's opinion in *Carl.Heck*, which makes specific provision for third-party removal where separate and independent federal causes of action exist.

According to the Fifth Circuit, "[i]f the third party complaint states a separate ad independent claim which if sued upon alone could have been brought properly in federal court," then third-party removal is permissible. *Carl Heck*, 622 F.2d at 136. In this

case, Hayduk has vehemently argued that the claims alleged against Teamsters are not separate and independent but instead, constitute an "interlocked series of transactions" with Hayduk's allegations against UPS. *See Persoff, supra* at 805. The Court cannot agree.

Although there is no conclusive definition of what constitutes "separate and independent," some guidance has been provided by the Supreme Court's decision in *American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951). In that case, the Court held that "where there is a single wrong to [the] plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent cause of action under 1441(c)." *Id.* at 14, 71 S.Ct. at 540.

 As an initial matter, the Court notes that, unlike § 1441(b), there is no requirement under § 1441(c) that all defendants must join in removal. Instead, "[o]nly the defendant to the separate and independent claim ... need seek removal." *Alexander by Alexander v. Goldome Credit Corp.,* 772 F.Supp. 1217, 1223 (M.D.Ala.1991). Considering that Hayduk, as co-defendant to the civil-conspiracy claim, has not consented to removal, the Court need not address whether that claim is separate and independent. Indeed, only one claim need be discussed, and that is UPS' claim against Teamsters for intentional interference with business relationships.

Further, the Court finds that claims for contribution or subrogation are, *per se,* interlocked with all other claims and events in this case. *In re Wilson Industries, Inc.,* 886 F.2d 93, 96 (5th Cir.1989); *Marsh Inv. Corp. v. Langford,* 494 F.Supp. 344, 349 (E.D.La. 1980), and further that those claims do not present federal questions sufficient to satisfy § 1331. As a result, henceforth unless otherwise noted, the Court will merely refer to "the claim" when discussing UPS' claim of intentional interference with business relationships against Teamsters.

Hayduk has, not surprisingly, alleged that UPS' claim is not separate and independent from the other claims alleged. According to Hayduk's papers:

The similarity of facts alleged in Plaintiff's Complaint and in UPS Counterclaim/Third–Party Complaint illustrates that the claim for intentional interference with business relationships set forth in the Third–Party Complaint and the claims set forth in Plaintiff Hayduk's Complaint are not separate and independent, but in fact arise from an interlocked series of transactions.

Clearly relying on the language of *Finn,* Hayduk bases this conclusion on the fact that the actions of Teamsters, and of Hayduk, all occurred on the same day, and all involved the same parties. Further, certain of UPS' factual allegations in support of its claim point to actions taken that directly involve Hayduk's decision to take the truck (i.e. advice from Teamsters officials). Ultimately, Hayduk seems to believe that UPS' claim against Teamsters stems from the phone call that Hayduk made to Teamsters. The Court believes that this interpretation is incorrect.

From the face of the third-party complaint, it is apparent that the thrust of UPS' claim is that Teamsters violated the TRO, and violated the CBA, by urging its members to strike against UPS on February 7, 1996. According to the factual allegations in support of its claim, UPS has stated:

On February 7, 1994, contrary to the express mandates, duties and obligations of law provided for in the TRO, the TEAMSTERS, failed to notify or educate its members, including UPS employee John Hayduk ("Hayduk"), of the provisions of the federal TRO prohibiting, inter alia, strike activity.

.... TEAMSTERS, ... were aware of the employment relationship between numerous individuals employed with UPS nationwide, but intentionally ... interfered with such relationships ... by organizing, engaging in and condoning ... the nationwide strike activity of February 7, 1994. *UPS' Answer and Third Party Complaint* ¶¶ 37 & 40.

Although many of UPS' allegations also implicate Teamsters in the actions alleged by Hayduk, the main thrust of UPS' claim arises from the facts outlined above. In other

words, where Hayduk has alleged a number of State based actions against UPS stemming from its decision to call the police and press charges, UPS' actions allege that Teamsters violated UPS' rights by urging its members to engage in strike activity, or at the very least failing to inform them of the illegality of such activity.

■ The touchstone for determining whether a claim is separate and independent is whether or not the claim "if sued upon alone could have been brought properly in federal court." *Carl Heck*, 622 F.2d at 136. In this case, there is no doubt that the allegations of interference stem from Teamsters' alleged violations of the TRO, and do not necessarily touch upon the facts or circumstances of Hayduk's claim. The 1991 decision in *Goldome*, 772 F.Supp. at 1217, offers some guidance.

*Goldome* involved claims by plaintiffs against Goldome Credit Corporation, and other defendants for various breach of contract claims, and a separate claim against Goldome alone, for a violation of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* Goldome sought to remove the Truth in Lending Act claim under § 1441(c), arguing that the claim was separate and independent. The court, in allowing removal under § 1441(c), offered the following:

> Plaintiffs' Truth in Lending Act claim, alleged only against defendant Goldome, is not contingent on the outcome of the fraud and breach of contract claims. It is possible that Goldome may have violated the provisions of the Truth in Lending Act, but that the work on plaintiffs' residence was performed properly by [other defendants]. Accordingly, the Federal Truth in Lending Act claim provides a basis for removal. . . . *Id.* at 1223.

■ In this case, the actions of Teamsters regarding the strike activities of February 7, 1994 may be found to be illegal, even if UPS was found to have committed no wrong. In other words, Hayduk may be unsuccessful on his claims, while UPS may be victorious on its claim against Teamsters. This is the essence of an independent claim, and the mere fact that some of the actors are the same, or that the events are somehow inter-

connected, cannot defeat Teamster's right to remove an otherwise separate and independent claim. As such, the Court finds that UPS' claim for intentional interference of business relationships is sufficiently "separate and independent" to be removable under § 1441(c).

The Court also notes that none of the briefs has addressed the issue whether it is necessary for UPS' claim of intentional interference with business relationships to be separate and independent, not from Hayduk's claims, but from UPS' other claims for contribution, subrogation and civil conspiracy. A reading of § 1441(c) would seem to require that the removable claim be separate and independent from non-removable claims in the same complaint. This is, of course, another difficulty associated with third-party removal, that is not present in "normal" removal settings, but is one that the Court believes merits discussion.

Without going into great detail, the Court believes that the interference claim is separate from UPS' other claims. For the same reasons discussed above, the intentional interference with business relationships claim is predicated on an allegation that Teamsters, separate from Hayduk's activities, organized or condoned illegal striking activity by its members, in violation of a federal district court injunction. This issue could have been brought even without the existence of Hayduk, and even if Hayduk had never visited Port Charlotte. All of the other claims are essentially linked with Hayduk's activities, and are thus inseparable. The interference claim, although loosely associated with Hayduk's activities in UPS' complaint, does not necessarily depend on the accuracy or existence of the events surrounding Hayduk in order for UPS to be victorious. As such, the Court believes that the claim is also separate from UPS' other claims.

■ However, the mere finding of separate and independent does not alone satisfy § 1441(c). Instead, the Court must also determine whether the separate and independent action is "within the jurisdiction conferred by section 1331." *See* § 1441(c). In

other words, it must be shown that this Court has subject matter jurisdiction to hear UPS' claim against Teamsters.

### SUBJECT MATTER JURISDICTION

 In this case, there is no claim of diversity, therefore, the original jurisdiction necessary for removal must be based on "federal question" jurisdiction. It is axiomatic that a cause of action can only be said to arise under the laws of the United States if a federal question appears on the face of, in this case, the third-party complaint. *See Lister v. Stark*, 890 F.2d 941, 943 (7th Cir. 1989). This axiom, generally referred to as the "well-pleaded complaint" rule, acts to uphold the right of a plaintiff to direct the course of action. In other words, it is understood that the plaintiff is the master of the complaint and is the "absolute master of what jurisdiction [to] appeal to." *Gully v. First National Bank*, 299 U.S. 109, 111, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936). Thus, it is accepted that a plaintiff may decide to forego any federal claims, and merely pursue State remedies. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 391 n. 7, 107 S.Ct. 2425, 2428–29 n. 7, 96 L.Ed.2d 318 (1987). With these principles in mind, courts have consistently held that appeals may not be had to the answer or to any removal petitions, in order to find a federal question. *Gully*, 299 U.S. at 113, 57 S.Ct. at 97–98; *Oklahoma Bankers Ass'n v. Home Sav. and Loan Ass'n*, 625 F.Supp. 993, 997 (W.D.Okl.1984).

 On its face, UPS' third-party complaint reveals no federal question. In the only applicable claim, the allegation of intentional interference with business relationships, no federal question is presented or referenced, the claim is merely a State common law tort. *See generally Gerber v. Keyes Co.*, 443 So.2d 199 (Fla.App. 3 Dist.1983). From the face of the complaint, it appears

that UPS has chosen not to pursue any remedy it may have under federal law, but instead has chosen to pursue its State common law remedy. However, it *is* possible, in some limited circumstances, for a court to look beyond the face of the complaint and determine if in fact a federal question exists.

 Specifically, it has been held that an exception exists to the well-pleaded complaint rule when Congress has completely preempted State law through the enactment of comprehensive federal legislation.[3] In other words, a finding of complete preemption forces the court to recast the plaintiffs' State claim into one arising under federal law. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987); *Franchise Tax*, 463 U.S. at 22–24, 103 S.Ct. at 2852–54. It is not enough to find that ordinary preemption exists, the claims of UPS must be completely preempted. *Caterpillar*, 482 U.S. at 393, 107 S.Ct. at 2430. Teamsters has argued that this exception applies here.

The basis for Teamsters' argument is found in § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"). According to § 301, "suits for violations of contracts between an employer and a labor organization ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." Courts have consistently interpreted the jurisdictional grant of § 301 as creating a complete preemption of State based claims that involve the interpretation of a CBA. According to Teamsters, UPS' claim, although couched in State law terms, must be preempted by the LMRA because it necessarily requires an interpretation of the CBA.

In order to determine whether UPS' claim against Teamsters is, in fact, preempted, the

---

3. The Court notes that another "exception" exists where a plaintiff's ability to obtain relief under a State law claim "requires resolution of a substantial question of federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 13, 103 S.Ct. 2841, 2848, 77 L.Ed.2d 420 (1983). In determining whether this exception applies, it must be shown that the plaintiff's well-pleaded complaint

necessarily implicates a federal question that must be resolved in order to resolve the State claim. *Id.* at 9–11. Although the Court believes that Teamster's removal petition could be justified on this ground, given that the Court finds UPS' claim for intentional interference with a business relationship is completely preempted by the Labor Management Relations Act, 29 U.S.C. § 185 *et seq.*, this issue need not be addressed.

Court must look to the Supreme Court's decision in *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). According to that decision, "an application of State law is preempted by § 301 ... only if such application *requires* the interpretation of a collective bargaining agreement." 486 U.S. at 407, 108 S.Ct. at 1882 (emphasis added). The Eleventh Circuit has recently echoed the Supreme Court in a case involving the Railroad Labor Act, 45 U.S.C. §§ 151 *et seq. Pyles v. United Air Lines, Inc.,* 79 F.3d 1046, 1049–50 (11th Cir.1996). In *Pyles,* after declaring that the preemptive effects of the RLA and FMLA are one in the same, the Eleventh Circuit opined:

> The fact that reference to a CBA may be required, particularly where factual issues are involved, is insufficient of itself to preempt an independent state-law claim; only where interpretation of a CBA is required will the claim be preempted. (citing *Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 114 S.Ct. 2239, 2251 [129 L.Ed.2d 203] (1994)).

Thus, in order for the Court to find that UPS' claim against Teamsters is preempted by the LMRA, it must be shown that it requires an interpretation of a CBA. Accordingly, "[i]n determining whether a state tort law claim ... requires interpretation of the terms of the collective bargaining agreement [the court must] first look to the elements of the state law claim." *Lightning v. Roadway Express, Inc.,* 60 F.3d 1551, 1557 (11th Cir.1995).

Under Florida law, UPS must satisfy each of the following three elements in order to recover for its claim of intentional interference with business relationships:

1. the existence of applicable business relationships under which UPS has legal rights;

2. intentional and unjustified interference with such relationships by Teamsters;

3. damage to UPS as a result of the breach of the relationships.

*International Funding Corp. v. Krasner,* 360 So.2d 1156, 1157 (Fla. 3d DCA, 1978). *See also Miami Child's World, Inc. v. Sunbeam,*

*Television Corp.,* 669 So.2d 336, 337 (Fla. 3d DCA, 1996); *Babbit Elecs., Inc. v. Dynascan Corp.,* 38 F.3d 1161, 1177 (11th Cir.1994) (per curiam).

Examining these elements, it is essential to determine whether any of them *requires* an interpretation of the CBA, it is not enough that they might or that they most probably should relate to the CBA. *See DeCoe v. General Motors Corp.,* 32 F.3d 212, 216 (6th Cir.1994) ("neither a tangential relationship to the CBA, nor the defendants assertions of the contract as an affirmative defense will turn an otherwise independent claim in to a claim dependent on a labor contract"); *Fox v. Parker Hannifin Corp.,* 914 F.2d 795, 800 (6th Cir.1990).

UPS has alleged the following facts in support of its claim against Teamsters:

1. On February 4, 1994, a TRO was issued against Teamsters, prohibiting any strike activity or other interference with UPS' normal business *Third–Party Complaint* ¶ 33.

2. The TRO expressly required Teamsters to inform its members of the prohibitions contained in the TRO. *Id.* at ¶ 34.

3. Teamsters, in violation of the TRO, organized and instigated strike activity at, among other places, Port Charlotte. *Id.* at ¶ 35.

4. Teamsters failed to notify its members, including Hayduk, of the TRO. *Id.* at ¶ 36.

5. Teamsters, in violation of the TRO, instructed Hayduk to "not complete his employment responsibilities" by telling him to take the tractor. *Id.* at ¶ 37.

6. Hayduk's reliance on Teamsters' instructions was in violation of his employment duties. *Id.* at ¶ 38.

7. Teamsters interfered with business relationship of UPS with its employees by organizing, or condoning, the strike activity at Port Charlotte. *Id.* at ¶ 40.

A review of these allegations makes clear that, as discussed above, the essence of the alleged violation by Teamsters is that it organized a strike and other disruptive activities,

either through direct action or inaction, on February 7, 1994, and that the organization of the strike activity was in direct violation of the TRO granted by the district court of the District of Columbia. Although the organization of the strike and/or failure to notify members of the existence of the TRO, is clearly the crux of UPS' claim, there is also a claim that Teamsters interfered with UPS' relationship with Hayduk, personally, by instructing him to take the tractor, "contrary to the duties and responsibilities of his employment."

The first step the Court must take in determining whether a federal question arises from UPS' claim, is to examine the elements of the State law claim and determine if proof of those elements will require interpretation of the CBA. The first element requires a finding of a business relationship between UPS and, according to the allegations of the complaint, its employees. At first glance, it seems obvious that as employees of UPS, and as members of Teamsters, the only way to determine if such a business relationship exists is to examine the CBA. The nature, scope and extent of that relationship is defined and created by the CBA, and to ignore that document seems impossible.

Upon deeper inspection, however, the Court is not convinced that this is the only manner in which the relationship may be determined to exist. Indeed, the Court believes that it is entirely capable, and it would be appropriate, to take judicial notice, under *Federal Rule of Evidence* Rule 201, of the fact that a business relationship exists between a company and its employees. As such, it seems entirely possible to satisfy the first element without ever examining the CBA.

Assuming the Court chose to determine the existence of a business relationship without reference to the CBA, reference is required in order to satisfy the second element discussed above. To show that Teamsters intentionally and unjustifiably interfered with that relationship, will require reference to the CBA. In order for UPS to show that Teamsters was unjustified in its actions, resort will be had to the CBA to determine what actions are justifiable and what are not.

Since the Court is convinced that the second element will require interpretation of the CBA, there is no need to discuss the third element, damage.

■ In the opinion of this Court, UPS' claim for intentional interference with business relationships necessarily requires reference to the CBA.

The Court also notes that that part of UPS' claim involving advice given to Hayduk by Teamsters' officials, although perhaps impermissibly muddled with other allegations in the claim, necessarily requires interpretation of the CBA. Indeed, the very language of UPS' complaint necessitates such interpretation. According to the complaint:

> [Teamsters] contrary to the express mandates, duties and obligation of law provided for in the TRO ... instructed [Hayduk] to not complete his employment responsibilities and duties. . . .

UPS clearly envisions referencing the CBA in order to prove what it considers to be "Hayduk's employment responsibilities and duties." Although this aspect of UPS' claim may not be completely "separate and independent" from the other claims in this case, it lends further support to this Court's conclusions that reference and interpretation of the CBA is necessary in this case, and therefore, a federal question is presented.

One final issue needs to be addressed before the Court determines whether remand or removal is proper in this case. The Court is aware that, at no time in UPS' third-party complaint, is direct reference made to the CBA. Instead, UPS has couched all of its allegations in terms of violations of the TRO. Thus, it may be argued that no federal question need arise because proof of Teamsters' "intent" and lack of "justification" in its actions on February 7, 1994 may be shown by reference to the explicit language of the TRO, without any need to reference the CBA. If this is the case, then it may be possible to argue that no federal question exists.

■ Counsel for Teamsters has attempted to avoid this problem by arguing, without any cited support, that the fact that the TRO

was issued by a federal court *automatically* gives rise to a federal question. An independent review of the law by this Court has failed to turn up any dispositive rulings on this issue. However, it seems to this Court that just because a TRO was issued by a federal court, does not automatically grant federal question jurisdiction over otherwise wholly State law violations. Of course, the federal court may have jurisdiction under its contempt power to punish the transgressor, but it does not follow that an otherwise separate State law claim is "transformed" into federal law merely because it implicates a federally issued TRO.

Instead, this Court believes that the proper procedure is to determine, in this case, whether a violation of the TRO is akin to a violation of the CBA. In other words, if it is shown that the TRO is, in effect, an interpretation of the CBA, then an alleged violation of that TRO necessarily implies an alleged violation of the CBA. The Court believes that this case presents such a scenario.

According to the TRO, Teamsters was prohibited, among other things, from:

> (c) Refusing to inform all employees of plaintiff who are members of the IBT [Teamsters] ... that any work stoppage or interference with work at any of plaintiff's locations related to the aforesaid increase in weight restriction is in violation of the collective bargaining agreement between UPS and the IBT. "Order for Temporary Restraining Order," *United Parcel Service Inc. v. International Brotherhood of Teamsters, Chauffeurs Warehousemen and Helpers*, Case No. 94–0215–CIVIL (February 4, 1994) (Dist. of Colum., Harris, J.).

 The court, in issuing the TRO, clearly based certain obligations and prohibitions on its interpretation of the CBA. The clear language of the TRO supports this finding. This Court believes that, although violation of a federally-issued TRO does not automatically confer federal question jurisdiction, in this case, this TRO's close connection with an applicable CBA does confer such jurisdiction.

### UPS' MOTION TO ASSERT JURISDICTION: REMAND OR REMOVAL

Only one final matter remains to be resolved, and that is UPS' Motion to Assert Jurisdiction. In that motion, UPS has explained that it does not oppose removal to this Court, nor does it oppose remanding the case to State court. UPS' only request is that this Court should keep the case together, and should not allow certain claims to be severed from others. For various reasons, this Court, unfortunately, believes that neither of UPS' preferences is possible.

At the outset, the Court notes that under § 1441(c) it is allowable to "remand all matters in which State law predominates." Recent interpretations of that language have opined that the Court is now empowered to remand the entire case, including the removable federal claim, to State court. Judge Birch, for instance, as a Justice on the Eleventh Circuit Court of Appeals, has recently authored an extensive dissenting opinion that sets out in detail the power of a district court to remand an entire case. *In re City of Mobile*, 75 F.3d 605, 608–614 (11th Cir.1996) (Birch, J. dissenting). According to Judge Birch, "section 1441(c) ... gives district courts the ability to remand 'all matters,' *or the entire case*, to state court if state law predominates." *Id.* at 610. *See also Goldome*, 772 F.Supp. at 1222–25; *Holland v. World Omni Leasing, Inc.*, 764 F.Supp. 1442, 1443–44 (N.D.Ala.1991); *Persoff*, 792 F.Supp. at 804.

 Thus, the Court does have the power to do as UPS wishes, as long as this Court can determine that State law predominates over the removable federal claim. Again, Judge Birch's opinion in *Mobile* provides significant guidance. Citing *Moore v. DeBiase*, 766 F.Supp. 1311, 1319 (D.N.J. 1991), Judge Birch has pointed out that "where pleadings invoke both state and federal law, 'a value judgment by the federal court,' is required." In making this value judgment, the federal court should:

> [D]ecide[ ] whether state law predominates by examining "the nature of the claims as set forth in the pleading and by determining whether the state law claims are more

complex or require more judicial resources to adjudicate or are more salient in the case as a whole than the federal law claims." *Mobile*, 75 F.3d at 613 (quoting *Moore*, 766 F.Supp. at 1319).

Following this procedure, this Court notes that only one (1) of the counts of the third party complaint may be declared to present a federal question in this case—the claim against Teamsters for intentional interference with business relationships. The fact that the federal claim is outnumbered is, of course, not sufficient to declare that State law predominates. In this case, however, it is clear that the majority of the claims, proofs, witnesses, and possible legal issues all stem from State law causes of action. For this reason, the Court believes that State law predominates the case as a whole.

However, the Court believes that the removable claim, as a separate and independent claim, is not predominated by State law. In this instance, at least, the removable claim may require substantial interpretations of federal law, and may require significant expenditure of judicial resources in order to prove that Teamsters acted intentionally and unjustifiably during the course of activities on February 7, 1994. Further, the Court is aware of the manner in which a federal court, particularly the district court for the District of Columbia, has been implicated in this case. The alleged violation of the TRO, which this Court believes necessarily implicates the CBA, will require extensive interpretation of the scope, meaning, and applicability of the TRO. As such, the Court cannot find that State law predominates over this issue, and although it is well within this Court's discretion under § 1441(c), it would be improvident, to remand this claim back to State court with the remainder of the case.

In the end, the Court is of the opinion that all matters, with the exception of UPS' claim for intentional interference with business relationships be remanded to State court. Further, this Court fully intends to have the matter of UPS' removable claim transferred to the district court for the District of Columbia, as it seems obvious that that Court has a significant interest in and relationship with this issue.

However, the Court is aware that the parties, although having ample opportunity to address these issues in the past, have not fully briefed the Court on the equities involved in this decision. In the interests of justice, and in order to allow for a full and fair opportunity for all sides to address the Court as to the equities involved in the decision to partially remand this case to State court, and transfer the remainder to another district, the Court directs the all of the parties to file a short brief with this Court within fifteen (15) days of the filing date of this *Order*. In particular, the Court is interested in knowing if significant costs and hardship will befall any one party if the case is split as contemplated. Although the Court does not believe that such a situation will arise, a brief may be necessary. No responses to the briefs will be needed.

The Court wishes to emphasize that it considers the rulings of this *Order* to be final, but that action will not be taken upon them until such time as the Court is convinced that the equities do not substantially outweigh the legal determinations that have been made. For this reason, the parties are directed that no action be taken in State court until further word from this Court.

For all of the preceding reasons, it is hereby,

ORDERED AND ADJUDGED:

(1) Hayduk's *Motion to Remand* [D.E. No. 6] is *GRANTED IN PART AND DENIED IN PART*;

(2) Hayduk's *Request for Hearing* [D.E. No. 8] is *DENIED AS **MOOT***;

(3) The Court reserves a ruling on the issue of attorneys' fees and costs until after a final determination is made concerning removal or remand;

(4) UPS' *Motion to Assert Jurisdiction Over the Entirety, or in the Alternative to Remand Case in its Entirety* [D.E. Nos. 9–1 & 9–2] is *DENIED.*

DONE AND ORDERED.