PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

PALISADES COLLECTIONS LLC,

*Plaintiff,*

v.

CHARLENE SHORTS,

*Defendant-Appellee,*

v.

AT&T MOBILITY LLC; AT&T
MOBILITY CORPORATION,

*Counter-Defendants-Appellants.*

---

CHAMBER OF COMMERCE OF THE
UNITED STATES,

*Amicus Supporting Appellants.*

No. 08-2188

Appeal from the United States District Court
for the Northern District of West Virginia, at Wheeling.
Irene M. Keeley, District Judge.
(5:07-cv-00098-IMK)

Argued: October 30, 2008

Decided: December 16, 2008

Before WILLIAMS, Chief Judge, and NIEMEYER and
KING, Circuit Judges.

Affirmed by published opinion. Chief Judge Williams wrote the opinion, in which Judge King concurred. Judge Niemeyer wrote a dissenting opinion.

---

## COUNSEL

**ARGUED:** Dan Himmelfarb, MAYER BROWN, L.L.P., Washington, D.C., for Appellants. Christopher James Regan, BORDAS & BORDAS, Wheeling, West Virginia, for Appellee. **ON BRIEF:** William M. Connolly, Michael P. Daly, DRINKER BIDDLE & REATH, L.L.P., Philadelphia, Pennsylvania; Jeffrey M. Wakefield, Christina S. Terek, FLAHERTY SENSABAUGH & BONASSO, P.L.L.C., Charleston, West Virginia; Evan M. Tager, Charles A. Rothfeld, Jack Wilson, MAYER BROWN, L.L.P., Washington, D.C., for Appellants. Jonathan Bridges, SUSMAN GODFREY, L.L.P., Dallas, Texas; William R. H. Merrill, SUSMAN GODFREY, L.L.P., Houston, Texas, for Appellee. Robin S. Conrad, Amar D. Sarwal, NATIONAL CHAMBER LITIGATION CENTER, INC., Washington, D.C.; John H. Beisner, Jessica Davidson Miller, Charles E. Borden, Richard G. Rose, O'MELVENY & MYERS, L.L.P., Washington, D.C., for Amicus Supporting Appellants. William David Wilmoth, Karen Elizabeth Kahle, STEPTOE & JOHNSON, P.L.L.C., Wheeling, West Virginia; Joseph Anthony Curia, III, STEPTOE & JOHNSON, P.L.L.C., Charleston, West Virginia, for Palisades Collections, LLC, on the merits.

---

## OPINION

WILLIAMS, Chief Judge:

This case presents an issue of first impression — whether a party joined as a defendant to a counterclaim (the "additional counter-defendant") may remove the case to federal

court solely because the counterclaim satisfies the jurisdictional requirements of the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28 of the United States Code). We hold that neither 28 U.S.C.A. § 1441(a) (West 2006) nor 28 U.S.C.A § 1453(b) (West 2006 & Supp. 2008) permits removal by such a party.

I.

On June 23, 2006, Palisades Collection L.L.C. ("Palisades"), a Delaware corporation, initiated a collection action in West Virginia state court against Charlene Shorts, a West Virginia resident, to recover $794.87 in unpaid charges plus interest on Shorts's cellular phone service contract.

The contract, originally entered into with AT&T Wireless Services, Inc., provided that Shorts would be charged a $150.00 early termination fee if she defaulted on her payment obligations before the end of the contract. In October 2004, Cingular Wireless L.L.C. ("Cingular") merged with AT&T Wireless Services, Inc. to become AT&T Mobility L.L.C. ("ATTM"). Before her contract term expired, ATTM determined that Shorts was in default on her account, terminated her service, and charged her the early termination fee. In June 2005, ATTM assigned its right to collect on Shorts's default to Palisades.

After Palisades filed the collection action in state court, Shorts filed an answer denying the complaint's allegations. Shorts also asserted a counterclaim against Palisades, alleging "unlawful, unfair, deceptive and fraudulent business act[s] and practices," in violation of the West Virginia Consumer Credit & Protection Act (the "Act"), as codified at W. Va. Code Ann. § 46A-6-104 (LexisNexis 2006). (J.A. at 8). Almost one year later, the state court granted Shorts leave to file a first amended counterclaim joining ATTM as an addi-

tional counter-defendant.[1] The amended counterclaim alleged that Palisades and ATTM violated the Act by "systematically contract[ing] for, charg[ing], attempt[ing] to collect, and collect[ing] illegal default charges in excess of the amounts allowed by West Virginia Code § 46A-2-115(a) and impos-[ing] unconscionable charges in violation of § 46A-2-121." (J.A. at 26.)

Shorts filed a motion for class certification, seeking to represent a class of individuals under similar contracts with Cingular and ATTM, but before the state court could rule on that motion, ATTM removed the case to the United States District Court for the Northern District of West Virginia. In response, Shorts filed a motion to remand, arguing that ATTM could not remove the case because it was not a "defendant" pursuant to the general removal statute, 28 U.S.C.A.

---

[1] We note that "[a] counterclaim is any suit by a defendant against the plaintiff including any claims properly joined with the claims against the plaintiff. A counterdefendant need not also be a plaintiff." *Dartmouth Plan, Inc. v. Delgado*, 736 F. Supp. 1489, 1491 (N.D. Ill. 1990); *Starr v. Prairie Harbor Dev. Co.*, 900 F. Supp. 230, 233 (E.D. Wis. 1995) (agreeing with *Delgado*'s conclusion that additional parties joined as defendants on a counterclaim are "properly characterized as 'counterclaim defendants' for removal purposes"). *See also Grubbs v. General Electric Credit Corp.*, 405 U.S. 699, 705 (1972) (referring to a party as "the additional counter-defendant").

Also, the district court properly noted that there is "some confusion as to the identity of the counterclaim defendants." *Palisades Collections L.L.C. v. Shorts*, No. 5:07CV098, 2008 U.S. Dist. LEXIS 6354, at *3 n.2 (N.D. W. Va. Jan. 29, 2008). Although Shorts requested leave to amend her counterclaim to assert causes of action against Palisades Collections L.L.C., AT&T Mobility L.L.C., and AT&T Mobility Corporation and served both AT&T Mobility L.L.C. and AT&T Mobility Corporation with the amended counterclaim, she named only Palisades and AT&T Mobility L.L.C. in the actual counterclaim. Nevertheless, both AT&T Mobility L.L.C. and AT&T Mobility Corporation joined in the notice of removal and in the memorandum in opposition to Shorts's motion to remand. The district court treated AT&T Mobility Corporation as a counter-defendant and referred to both AT&T Mobility entities jointly as "ATTM." We will do the same.

§ 1441. The district court granted Shorts's motion and remanded the case to state court, concluding that ATTM could not remove the case to federal court because: (1) "it [was] not a 'defendant' for purposes of removal under § 1441," *Palisades Collections L.L.C. v. Shorts*, No. 5:07CV098, 2008 U.S. Dist. LEXIS 6354, at \*13 (N.D. W. Va. Jan. 29, 2008), and (2) CAFA does not create independent removal authority that would allow ATTM to "circumvent the long-standing requirement that only a true defendant may remove a case to federal court," *id.* at \*29.

We granted ATTM permission to appeal, and we possess jurisdiction to review the district court's remand order under 28 U.S.C.A. § 1453(c)(1).

## II.

ATTM makes two principal arguments. First, in its notice of removal, ATTM contended that the case is removable under the general removal statute, 28 U.S.C.A. § 1441.[2] Second, on appeal, ATTM now argues that, even if § 1441 does not permit removal by additional counter-defendants, §1453(b), added by CAFA, constitutes a separate removal power authorizing ATTM to remove. ATTM also makes an additional argument that, if neither § 1441 nor § 1453(b) permits removal by additional counter-defendants, then we

---

[2]In the *jurisdictional* statement portion of its notice of removal, ATTM demonstrated that the counterclaim satisfied the requirements of CAFA and then stated that "[b]ecause this action states a basis for original subject matter jurisdiction under 28 U.S.C. § 1332, *this action is removable pursuant to 28 U.S.C. § 1441(a).*" (J.A. at 37 (emphasis added).) In the *procedural* statement portion of its notice of removal, ATTM stated that, pursuant to 28 U.S.C.A. § 1453 (West 2006 & Supp. 2008), it could remove the case without obtaining the consent of all defendants and regardless of whether one of the defendants was a citizen of West Virginia, the state in which the action was brought; ATTM also relied on 28 U.S.C.A. § 1441(a) (West 2006) to establish that venue was proper in the Northern District of West Virginia.

should realign the parties to make ATTM a traditional defendant.

ATTM's first two arguments raise questions concerning removal to federal court and issues of statutory interpretation, which we review *de novo*. *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 203 (4th Cir. 2006) (questions concerning removal); *United States v. Abuagla*, 336 F.3d 277, 278 (4th Cir. 2003) (issues of statutory interpretation). In resolving this case, we are mindful that "federal courts, unlike most state courts, are courts of limited jurisdiction, created by Congress with specified jurisdictional requirements and limitations." *Strawn v. AT&T Mobility L.L.C.*, 530 F.3d 293, 296 (4th Cir. 2008). And, we are likewise cognizant that "[w]e must not give jurisdictional statutes a more expansive interpretation than their text warrants, but it is just as important not to adopt an artificial construction that is narrower than what the text provides." *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 558 (2005) (citation omitted).

"When interpreting statutes, we start with the plain language." *United Seniors Ass'n, Inc. v. Social Sec. Admin.*, 423 F.3d 397, 402 (4th Cir. 2005) (internal quotation marks omitted). We also recognize that "[s]tatutory construction is a holistic endeavor," *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60 (2004), and that "[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole," *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). *See also United States v. Heirs of Boisdore*, 49 U.S. (8 How.) 113, 122 (1850) ("In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy."). "A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear, or because only one of the permissi-

ble meanings produces a substantive effect that is compatible with the rest of the law." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988) (citations omitted).

## A.

Before turning to the issues raised in this appeal, an overview of the relevant jurisdictional statutes is appropriate to place the following discussion in context.

The general removal statute, 28 U.S.C.A. § 1441, provides that "any civil action brought in a State court of which the district courts of the United States have *original jurisdiction*, may be removed by *the defendant or the defendants*, to the district court of the United States for the district and division embracing the place where such action is pending." § 1441(a) (emphasis added). Section 1446 of Title 28 of the United States Code establishes the procedures for removal of a case under § 1441. *See* 28 U.S.C.A. § 1446 (West 2006).

Through CAFA, Congress expanded federal diversity jurisdiction by amending 28 U.S.C.A. § 1332 to give federal district courts *original jurisdiction* of "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which—(A) any member of a class of plaintiffs is a citizen of a State different from any defendant." 28. U.S.C.A. § 1332(d)(2) (West 2006).

In addition to amending § 1332, Congress also added 28 U.S.C.A. § 1453(b), which provides:

> A class action may be removed to a district court of the United States in accordance with [28 U.S.C. §] 1446 (except that the 1-year limitation under section 1446(b) shall not apply), without regard to whether any defendant is a citizen of the State in which the

action is brought, except that such action may be removed by any defendant without the consent of all defendants.

For purposes of § 1453(b), Congress defined a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C.A. § 1332(d)(1)(B); *see* 28 U.S.C.A. § 1453(a) (explaining that, for purposes of § 1453, a class action has the meaning given in § 1332(d)(1)).

Section 1453(b) eliminates at least three of the traditional limitations on removal: (1) the rule that, in a diversity case, a defendant cannot remove a case from its home forum, § 1441(b); (2) the rule that a defendant cannot remove a diversity case once it has been pending in state court for more than a year, § 1446(b); and (3) the rule that all defendants must consent to removal, *Chicago, Rock Island & Pac. Ry. Co. v. Martin*, 178 U.S. 245, 248 (1900) (concluding that "all the defendants must join in the application" for removal); *Payne ex rel. Estate of Calzada*, 439 F.3d at 203 ("Failure of all defendants to join in the removal petition . . . is . . . an error in the removal process."). *See, e.g.*, *Progressive W. Ins. Co. v. Preciado*, 479 F.3d 1014, 1018 n.2 (9th Cir. 2007); *see also* S. Rep. No. 109-14, at 48 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 45 ("[Section 1453] establishes the procedures for removal of interstate class actions over which the federal court is granted original jurisdiction in new section 1332(d). The general removal provisions currently contained in Chapter 89 of Title 28 would continue to apply to class actions, except where they are inconsistent with the provisions of the Act. For example, like other removed actions, matters removable under this bill may be removed only 'to the district court of the United States for the district and division embracing the place where such action is pending.'").

Accordingly, with this framework in place, we now turn to ATTM's arguments.

B.

In its notice of removal, ATTM contended that § 1441(a), which permits removal of a civil action over which the federal district courts have original jurisdiction by "the defendant or the defendants," permits ATTM, an additional counter-defendant, to remove the case to federal court. We do not agree.

In *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941), the Supreme Court considered the question of "whether the suit in which [a] counterclaim is filed is one removable by the [original] plaintiff to the federal district court . . . ," *id.* at 103, under the statutory predecessor to § 1441(a), which provided that an action "may be removed by the defendant or defendants therein to the district court of the United States for the proper district," *id.* at 105 n.1. Although the Court acknowledged that, between 1875 and 1887, the removal statute allowed "either party" to remove the suit to federal court, *id.* at 104-05, the Court concluded that Congress "narrow[ed] the federal jurisdiction on removal" by amending the statute in 1887 to allow removal only "by the 'defendant or defendants' in the suit," *id.* at 107. Noting that interpretation of removal statutes "call[ed] for . . . strict construction," *id.* at 108, the Court thus held that the original plaintiff against whom the original defendant had filed a counterclaim could not remove the case to federal court under § 1441(a)'s predecessor.

For more than fifty years, courts applying *Shamrock Oil* have consistently refused to grant removal power under § 1441(a) to third-party defendants—parties who are not the original plaintiffs but who would be able to exercise removal power under ATTM's interpretation. *See Cross Country Bank v. McGraw*, 321 F. Supp. 2d 816, 821-22 (S.D. W. Va. 2004)

(noting that district courts within the Fourth Circuit have adopted the majority rule that "a third-party defendant is distinct from 'the defendant or defendants' who are permitted to remove cases pursuant to 28 U.S.C. § 1441(a)"); *Galen-Med, Inc. v. Owens*, 41 F. Supp. 2d 611, 614 (W.D. Va. 1999) ("The majority view, that third-party defendants are not 'defendants' for purposes of removal under 28 U.S.C. § 1441(a), is the better rule."); *Hayduk v. UPS*, 930 F. Supp. 584, 590 (S.D. Fla. 1996) ("Nearly every court that has considered the question whether third-parties may remove under § 1441(a) has determined that they may not."); *Croy v. Buckeye Int'l, Inc.*, 483 F. Supp. 402, 406 (D. Md. 1979) ("The overwhelming weight of authority indicates that a third party defendant is not entitled to removal of an entire case to federal court under 28 U.S.C. § 1441(a)."); *Manternach v. Jones County Farm Serv. Co.*, 156 F. Supp. 574, 577 (N.D. Iowa 1957) (noting that courts "are not in disagreement as to the non-removability of a third-party claim [under § 1441(a)]").

As the Sixth Circuit more recently explained, "[a]lthough *Shamrock Oil* is not dispositive of the precise issue before us, it does dictate that the phrase 'the defendant or the defendants,' as used in § 1441(a), be interpreted narrowly, to refer to defendants in the traditional sense of parties against whom the [original] plaintiff asserts claims." *First Nat'l Bank of Pulaski v. Curry*, 301 F.3d 456, 462-63 (6th Cir. 2002) (noting that the American Law Institute has recommended that Congress "make[ ] clear what the present law merely implies: the right of removal applies only to the action as framed by the pleading that commences the action. Counterclaims, cross-claims, and third-party claims cannot be the basis for removal [under § 1441(a)]"); *see also Florence v. ABM Indus.*, 226 F. Supp. 2d 747, 749 (D. Md. 2002) ("[I]n adopting the current language [of the removal statute], Congress intended to restrict removal jurisdiction solely to the defendant to the main claim.").

Of course, additional counter-defendants, like third-party defendants, are certainly not defendants against whom the

original plaintiff asserts claims. Thus, we easily conclude that an additional counter-defendant is not a "defendant" for purposes of § 1441(a). *See, e.g.*, *Capitalsource Fin., L.L.C. v. THI of Columbus, Inc.*, 411 F. Supp. 2d 897, 900 (S.D. Ohio 2005) (concluding that "additional counterclaim defendants . . . are not defendants within the meaning of the removal statute . . . [and] do not have statutory authority . . . to remove this case"); *Dartmouth Plan, Inc. v. Delgado*, 736 F. Supp. 1489, 1492 (N.D. Ill. 1990) ("But just as a third-party has no special rights to remove, neither does a nonplaintiff counterdefendant. A counterdefendant is not a defendant joined in the original action and therefore not a party that can remove a state action to federal court."); *Tindle v. Ledbetter*, 627 F. Supp. 406, 407 (M.D. La. 1986) (noting that because the Justices, who were joined as defendants on the counterclaim under Louisiana's procedural equivalent to Fed. R. Civ. P. 13(h), "are [additional] counterclaim defendants, they cannot remove this suit to federal court"); *see also* 16 James W. Moore et al., Moore's Federal Practice § 107.11[1][b][iv] (3d ed. 1998) (noting that the "better view" is that counterdefendants, cross-claim defendants, and third-party defendants "are not *defendants* within the meaning of [§ 1441(a)]").

Congress has shown the ability to clearly extend the reach of removal statutes to include counter-defendants, cross-claim defendants, or third-party defendants, *see* 28 U.S.C. § 1452(a) (West 2006) ("A *party* may remove any claim or cause of action . . . [related to bankruptcy cases]." (emphasis added)). In crafting § 1441(a), however, Congress made the choice to refer only to "the defendant or the defendants," a choice we must respect. Thus, ATTM, as an additional counter-defendant, may not remove the case to federal court under § 1441(a).[3] This conclusion is consistent with the well-

---

[3]Shorts also contends that removal under § 1441(a) is impermissible because the district court does not have "original jurisdiction" over the case based on Palisades's complaint, which asserts only a state-law collection action for approximately $800, and because a counterclaim cannot serve as the basis for original jurisdiction in a diversity case such as this one. Given our conclusion that an additional counter-defendant may not remove under § 1441(a), we have no reason to address this argument.

established principle that "[w]e are obliged to construe removal jurisdiction strictly because of the significant federalism concerns implicated" and that "if federal jurisdiction is doubtful, a remand to state court is necessary." *Md. Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005) (internal quotation marks, citations, and alterations omitted); *see also Shamrock Oil*, 313 U.S. at 109 ("Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined." (internal quotation marks omitted)).

## C.

Perhaps anticipating our conclusion that an additional counter-defendant may not remove under § 1441(a), ATTM argues that § 1453(b) provides a removal power independent of that conferred in § 1441(a). ATTM further argues that, under the broad language of § 1453(b), any defendant, including a counter-defendant, may exercise that removal power. We need not decide whether § 1453(b) grants such a power because, even assuming that § 1453(b) grants a power of removal, ATTM, as an "additional counter-defendant," may not exercise this power.

ATTM argues that the broad language of § 1453(b) permits an additional counter-defendant to remove a class action to federal court for two reasons. First, ATTM contends that because § 1453(b) provides only that a class action "may be removed to a district court," it does not limit the parties entitled to remove. Second, ATTM contends that, in overriding several traditional limitations on removal, § 1453(b) twice refers to "any defendant," a phrase it believes is broad enough to include counter-defendants.

We find neither argument convincing. First, ATTM's contention that § 1453(b) grants it removal power because it does not expressly limit the parties who may remove simply does

not comport with the language of § 1453(b) when the statute is read in its entirety. Given that the only reference in the statute as to a party who may remove is to a "defendant," and that the statute states that the class action may be removed "in accordance with [28 U.S.C. §] 1446," which specifically provides procedures for "[a] defendant or defendants" to remove cases to federal court, *see* § 1446(a), we think that Congress clearly did not intend to extend the right of removal to parties other than "defendant[s]." And, as discussed in Section II.B, "defendant" in the removal context is understood to mean only the original defendant.[4]

---

[4]We note that ATTM's broad interpretation of § 1453(b) would necessarily allow an original *plaintiff/counter-defendant* to remove a class action asserted against it. The Ninth Circuit recently considered just such a situation in *Progressive W. Ins. Co. v. Preciado*, 479 F.3d 1014 (9th Cir. 2007), albeit in dicta. In that case, the plaintiff argued that CAFA should be interpreted as "allowing a plaintiff forced to defend a class action on the basis of a cross-complaint to have the same right to remove the class action as a defendant." *Id.* at 1017. Concluding that "CAFA is not susceptible to such an interpretation," *id.*, the Ninth Circuit wrote:

> Although CAFA does eliminate three significant barriers to removal for qualifying actions, CAFA does not create an exception to *Shamrock*'s longstanding rule that a plaintiff/cross-defendant cannot remove an action to federal court. CAFA's removal provision, section 1453(b), provides that "[a] class action may be removed to a district court . . . in accordance with section 1446." Section 1446, in turn, sets forth the removal procedure for "[a] *defendant or defendants* desiring to remove any civil action . . . from a State court." The interpretation of "defendant or defendants" for purposes of federal removal jurisdiction continues to be controlled by *Shamrock [Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941)], which excludes plaintiff/cross-defendants from qualifying "defendants."

> Nor can we accept Progressive's invitation to read CAFA liberally as making a *sub silentio* exception to *Shamrock*. We have declined to construe CAFA more broadly than its plain language indicates. "Faced with statutory silence . . ., we presume that Congress is aware of the legal context in which it is legislating." This presumption is especially appropriate here, where "[t]he legal context in which the 109th Congress passed CAFA into law

Second, the use of the phrase "any defendant" also does not grant removal power to additional counter-defendants. Section 1453(b) uses "any defendant" twice—first stating that a class action may be removed "without regard to whether *any defendant* is a citizen of the State in which the action is brought" and then stating that "such action may be removed by *any defendant* without the consent of all defendants." §1453(b) (emphasis added). The first provision eliminates the so-called "home-state defendant" restriction on removal found in § 1441(b), which is the rule that diversity actions "shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." § 1441(b). Of course, under the normal rules of statutory construction, "the same terms [should] have the same meaning in different sections of the same statute." *LaRue v. DeWolff, Boberg & Assocs.*, 128 S. Ct. 1020, 1027 (2008) (internal quotation marks and alterations omitted). Thus, given that we have already concluded that "defendant" in § 1441(a) means only an original defendant, we must likewise conclude that "defendant" in § 1441(b) means only an original defendant. Because "we presume that Congress legislated consistently with existing law and with the knowledge of the interpretation that courts have given to the existing statute," *Strawn*, 530 F.3d at 297, that the first reference to "defendant" in § 1453(b) is in relation to § 1441(b)'s "home-state defendant" rule only reinforces our

---

features a longstanding, near-canonical rule" that a state plaintiff forced to defend on the basis of a cross-complaint is without authority to remove.

Therefore, we must conclude CAFA does not alter the long-standing rule announced in *Shamrock* that precludes plaintiff/cross-defendants from removing class actions to federal court.

*Id.* at 1017-1018 (emphasis in original) (internal citations omitted). We agree that § 1453(b) should not be read to allow removal by original plaintiffs.

conclusion that "defendant" in § 1453(b) also means only the original defendant. *Cf. Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 58 (2d. Cir. 2006) ("It is true that Congress displayed in CAFA an aim to broaden certain aspects of federal jurisdiction for class actions. However, we think that, rather than evincing an intent to make as drastic a change to federal jurisdiction as Blockbuster proposes, CAFA's detailed modifications of existing law show that Congress appreciated the legal backdrop at the time it enacted this legislation.").

The statute's use of the word "any" to modify "defendant" does not alter our conclusion that additional counter-defendants may not remove under § 1453(b) because the use of the word "any" cannot change the meaning of the word "defendant." Likewise, § 1453(b)'s second use of the phrase "any defendant," i.e., "such action may be removed by *any defendant* without the consent of all defendants," § 1453(b) (emphasis added), eliminates the judicially-recognized rule of unanimous consent for removal; the use of the word "any" juxtaposed with the word "all" was intended to convey the idea of non-unanimity, not to alter the definition of the word "defendant."

Put simply, there is no indication in the language of § 1453(b) (or in the limited legislative history) that Congress intended to alter the traditional rule that only an original defendant may remove and to somehow transform an additional counter-defendant like ATTM into a "defendant" with the power to remove. Reading § 1453(b) to also allow removal by counter-defendants, cross-claim defendants, and third-party defendants is simply more than the language of § 1453(b) can bear.

Thus, we conclude that ATTM, as an additional counter-defendant, does not have a right to remove under either § 1441(a) or § 1453(b). Again, this conclusion is consistent with our duty to construe removal jurisdiction strictly and

resolve doubts in favor of remand.[5] *SeeMd. Stadium Auth.*, 407 F.3d at 260.

In an effort to overcome this plain language, ATTM stresses that "[i]t is inconceivable that Congress intended to leave [a] large category of class actions in state court." (Appellants' Br. at 25.) But, § 1332(d) itself leaves many class actions in state courts, *see, e.g.*, *Luther v. Countrywide Home Loans Servicing L.P.*, 533 F.3d 1031 (9th Cir. 2008) (affirming remand of a class action to state court); *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 804 (5th Cir. 2007) (same), and although we are cognizant of the fact that Congress clearly wished to expand federal jurisdiction through CAFA, we also recognize that it is our duty, as a court of law, to interpret the statute as it was written, not to rewrite it as ATTM believes Congress *could have* intended to write it. If Congress intended to make the sweeping change in removal practice that ATTM suggests by altering the near-canonical rule that only a "defendant" may remove and that "defendant" in the context of removal means only the original defendant, it should have plainly indicated that intent.

---

[5]ATTM argues that this federalism-based canon of strict construction, which favors adjudication in state court, has no place in the interpretation of CAFA because Congress enacted CAFA to favor federal jurisdiction over qualifying class actions. This suggestion finds no support in our sister circuits. *See Miedema v. Maytag Corp.*, 450 F.3d 1322, 1328-29 (11th Cir. 2006) ("Statements in CAFA's legislative history, standing alone, are a insufficient basis for departing from th[e] well-established rule [of construing removal statutes strictly and resolving doubts in favor of remand]."); *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006) (applying the rule of strict construction of removal statutes to interpretation of CAFA); *see also Pritchett v. Office Depot, Inc.*, 420 F.3d 1090, 1097 n.7 (10th Cir. 2005) ("We are mindful of the fact that Congress' goal in passing [CAFA] was to increase access to federal courts, and we also recognize that the Senate report instructs us to construe the bill's terms broadly. But these general sentiments do not provide *carte blanche* for federal jurisdiction over a state class action any time the statute is ambiguous." (internal citations omitted)).

### D.

Finally, ATTM argues that, if neither § 1441 nor § 1453(b) permits removal by an additional counter-defendant, then "the parties should be realigned so that ATTM is deemed a 'defendant' with the right of removal." (Appellants' Br. at 41.) Because the question of realignment concerns removal, and removal jurisdiction and realignment are "not severable for the purpose of determining the proper standard of review," *U.S. Fid. & Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1088 (6th Cir. 1992), we also review the district court's refusal to realign the parties *de novo*. Should our inquiry involve factual determinations made by the district court, we review those determinations for clear error. *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 872-73 (9th Cir. 2000).

In determining whether to realign parties, we apply the "principal purpose" test: First, we determine the primary issue in controversy, and then we align the parties according to their positions with respect to the primary issue. *United States Fid. & Guar. Co. v. A & S Mfg. Co.*, 48 F.3d 131, 132-33 (4th Cir. 1995). "The determination of the 'primary and controlling matter in dispute' does not include the cross-claims and counterclaims filed by the defendants. Instead, it is to be determined by plaintiff's principal purpose for filing its suit." *Zurn Indus., Inc. v. Acton Constr. Co.*, 847 F.2d 234, 237 (5th Cir. 1988) (emphasis added).

Here, Palisades's "principal purpose" in filing the suit was to collect Shorts's debt. On that issue, Palisades and Shorts were properly aligned. Thus, like the district court, we conclude that realignment was inappropriate.

### III.

We reiterate that our holding today is narrow: Under both § 1441(a) and § 1453(b), a counter-defendant may not remove

a class action counterclaim to federal court. Congress is presumed to know the current legal landscape against which it legislates, and we are merely applying those pre-existing established legal rules. If Congress wants to overturn such precedent, it should do so expressly.

For the foregoing reasons, the judgment of the district court is hereby

*AFFIRMED*.

NIEMEYER, Circuit Judge, dissenting:

Palisades Collections LLC, a collection agency, commenced this action in West Virginia state court by filing a state-law debt collection case against Charlene Shorts for a $794.87 debt incurred by Shorts under her cell phone service contract with AT&T Mobility LLC. Shorts filed a class action counterclaim against Palisades Collections and joined AT&T Mobility LLC and AT&T Mobility Corporation (collectively "AT&T") as defendants. In the class action counterclaim, Shorts purported to represent 160,000 citizens of West Virginia, alleging that AT&T's cell phone service contracts violated the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-1-101 *et seq.* and demanding over $16 million in damages.

Relying on the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4, AT&T removed the case to federal court. *See* 28 U.S.C. §§ 1332(d), 1453(b).

On Shorts' motion, the district court remanded the case to the West Virginia state court from which it was removed. The court found that Shorts' counterclaim class action met all of the jurisdictional requirements of CAFA embodied in 28 U.S.C. § 1332(d)(2) inasmuch as Shorts purported to represent a class of 160,000 West Virginia customers (well over the CAFA minimum of 100 class members); the class claimed

in the aggregate a minimum of $16 million in damages (well over the CAFA minimum of $5 million); and minimum diversity, as required by § 1332(d)(2)(A), existed. Most of the class members are West Virginia citizens, whereas AT&T is a citizen of Georgia and Delaware, and Palisades Collections is a citizen of New Jersey and Delaware. *See* 28 U.S.C. § 1332(c)(1). The district court also found inapplicable CAFA's home-state exception, which only applies when most class members have the same citizenship as one of the defendants. *See* 28 U.S.C. § 1332(d)(4). Although the district court thus found that it had removal *jurisdiction* under § 1332(d), it nonetheless held that CAFA did not give AT&T, as a *counterclaim* defendant, removal *authority* under 28 U.S.C. § 1453(b).

AT&T filed this interlocutory appeal under 28 U.S.C. § 1453(c), challenging the district court's ruling that because AT&T was a counterclaim defendant, it did not have removal authority under CAFA. Shorts supports the district court's conclusion that CAFA did not provide AT&T with removal authority and also challenges the district court's finding of removal jurisdiction under § 1332(d).

The majority opinion agrees with the district court that a counterclaim defendant is not granted authority under CAFA, 28 U.S.C. § 1453(b), to remove a class action that otherwise meets the jurisdictional requirements of § 1332(d), and therefore it does not reach Shorts' jurisdictional argument.

For the reasons stated in this opinion, I conclude that CAFA does indeed authorize AT&T to remove this interstate class action, even though AT&T was sued as a counterclaim defendant, not as an original defendant. Section 1453(b), added by CAFA, expanded removal authority, conferring on "*any* defendant" the right to remove a "class action." And removal jurisdiction exists under 28 U.S.C. §§ 1332(d) and 1441, as found by the district court. Accordingly, I respectfully dissent.

### I.   Removal Authority

Removal of a case from state court to federal court is generally proper when (1) the federal court has removal *jurisdiction* and (2) the removing party has removal *authority*. Since the majority rests its judgment entirely upon AT&T's purported lack of removal authority, I begin with that issue.

The majority holds that AT&T may not remove the class action filed against it because, *and only because*, AT&T was sued as an additional defendant in a counterclaim, as distinct from being named an original defendant in an independent action. It concludes that because AT&T is a counterclaim defendant, it does not fall within the language "may be removed by *any* defendant" of § 1453(b) (emphasis added). The majority's conclusion, I respectfully submit, is demonstrably at odds with this broad language.

Section 1441(a) states the general rule for removal authority, that civil actions, "of which the district courts of the United States have original jurisdiction, may be removed by *the* defendant or *the* defendants." 28 U.S.C. § 1441(a) (emphasis added). This language is the basis for both the rule that *all* defendants must unanimously consent to removal, *see Chicago, Rock Island & Pac. Ry. v. Martin*, 178 U.S. 245, 247 (1900), and the rule that only *original* defendants can remove, *see Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 106-08 (1941). But 28 U.S.C. § 1453(b), which was added by CAFA, provides a different rule for removal of class actions over which the district court has removal jurisdiction. It states that a class action "may be removed by *any* defendant without the consent of all defendants" (emphasis added). This language expands removal authority in the CAFA context.

Shorts and the majority agree that § 1453(b) does expand removal authority, but just not far enough to reach the present case. For example, § 1453(b) expands removal authority by allowing removal "without regard to whether any defendant is

a citizen of the State in which the action is brought." They acknowledge that this modifies § 1441(b)'s home-state rule, which denies removal authority whenever at least one defendant resides in the State whose court has the case.

Similarly, I submit that § 1453(b), in authorizing removal "by *any* defendant," also expands removal authority beyond the limits of § 1441(a) so that it includes any defendant joined as an additional defendant to a counterclaim, as well as any counterclaim defendant. As the Supreme Court has repeatedly noted, "[r]ead naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *Ali v. Fed. Bureau of Prisons*, 128 S. Ct. 831, 835-36 (2008) (quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997) (quoting *Webster's Third New International Dictionary* 97 (1976))). A *counterclaim* defendant is certainly a "kind" of defendant and falls easily within "indiscriminately of whatever kind" of defendant. The plain language of § 1453(b) thus gives AT&T, as a kind of defendant, authority to remove the class action in this case from state court to federal court.

Both Shorts and the majority argue that we should read the word "any" narrowly, based upon the *exclusive* congressional purpose perceived to exist behind the entire clause. But neither Shorts nor the majority cite any statutory language or legislative history to support their articulation of CAFA's exclusive purpose in authorizing *any* defendant to remove a class action. They maintain simply that in using "any defendant" in § 1453(b), Congress intended to overrule *only* the long-standing requirement that defendants must unanimously consent to removal. *See Martin*, 178 U.S. at 247. And in making this point, they argue that the "any defendant" language of § 1453(b), for some unexplained reason, does *not* modify the rule announced in *Shamrock Oil*, 313 U.S. at 106-08, that counterclaim defendants who are also plaintiffs cannot remove under § 1441(a).

I agree with Shorts and the majority that § 1453(b)'s "any defendant" language expands removal authority by abolishing *Martin*'s unanimous consent rule in the CAFA context. But I maintain that the same clause also abolishes the *Shamrock Oil* rule for CAFA purposes. Not only is the language of § 1453(b) clear here, but also both *Shamrock Oil* and *Martin* were based on the exact same language in § 1441(a)'s predecessor.[1] It seems implausible at best that the § 1453(b) language abolished the *Martin* rule while leaving untouched the *Shamrock Oil* rule, especially when both rules depended on the same language.

In both *Martin* and *Shamrock Oil*, the Supreme Court based its holding on the statutory interpretation of the wording "the defendant or defendants" in § 1441(a)'s prior codifications, 28 U.S.C. § 71 (1940) (the codification at the time of *Shamrock Oil*), and Act of August 13, 1888, 25 Stat. 433, ch. 866, § 2 (the location at the time of *Martin*).[2] The *Martin* court found the unanimity rule plain:

> It thus appears on the face of the statute that if a suit arises under the Constitution or laws of the United States, or if it is a suit between citizens of different States, *the* defendant, if there be but one, may remove, or *the* defendants, if there be more than one.

[1] The decision in *Progressive West Insurance Co. v. Preciado*, 479 F.3d 1014, 1017 (9th Cir. 2007), is not persuasive to reach a contrary conclusion as it forces *Shamrock Oil*'s interpretation of § 1441(a)'s "*the* defendant or defendants" onto § 1446(a)'s "*a* defendant or defendant," which *Shamrock Oil* did not interpret. Yet, "[i]t is a rule of law well established that the definite article 'the' particularizes the subject which it precedes. It is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an.'" *American Bus Ass'n v. Slater*, 231 F.3d 1, 4-5 (D.C. Cir. 2000). Section 1446, moreover, neither creates nor alters removal authority, being entirely procedural, as suggested by its title, "Procedure for Removal."

[2] Congress added the second "the" in "the defendant or *the* defendants" as part of a modernization of § 1441's language. *See* Act of June 25, 1948, ch. 646, 62 Stat. 937; 28 U.S.C.A. § 1441 note (2008).

\* \* \*

> And in view of the language of the statute we think the proper conclusion is that all the defendants must join in the application . . . .

178 U.S. at 247, 248 (emphasis added). And *Shamrock Oil* relied upon Congress' deliberate replacement in 1887 of "either party" with "the defendant or defendants" in finding that counterclaim defendants who are also plaintiffs cannot remove. *See* 313 U.S. at 106-07.

Even though both the unanimity rule of *Martin* and the original defendant rule of *Shamrock Oil* derive from the same language in § 1441(a), the majority asserts that § 1453(b)'s "any defendant" language abolishes one but not the other. We should hesitate before attributing such acrobatic skill to Congress.

Shorts and the majority contend that "defendant" should be read consistently throughout §§ 1441 and 1453 and that because "the defendant" in § 1441(a) refers to the *original* defendant, "any defendant" in § 1453(b) should also refer to the original defendant. *See, e.g.*, *ante* at 13. But reading "defendant" consistently does not mean we must read "*any* defendant" in § 1453(b) the same as "*the* defendant or *the* defendants" in § 1441(a). Surely one is not construing "defendant" differently when one finds "*any* defendant" has a different meaning from "*the* defendant or *the* defendants." The article "the" *restricts* the noun that follows, while the article "any" expands its meaning. *See Reid v. Angelone*, 369 F.3d 363, 367 (4th Cir. 2004); *accord Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1356 (Fed. Cir. 2003) ("the" has a narrowing effect, while "any" would have a broadening effect). Moreover, the majority seems to recognize the difference in meaning between "any defendant" and "the defendant" when it states that "any defendant" overrules the *Martin*

rule, which had depended on the phrase, "the defendant." *See ante* at 15.

The majority's assertion that in both § 1441(a) and § 1453(b) the word "defendant" means only "original defendant" is both puzzling and potentially unsettling to existing interpretations of jurisdictional statutes. The majority opinion applies the logic that because "the defendant" in § 1441(a) refers to the original defendant, as held by *Shamrock Oil*, "any defendant" must likewise mean only original defendant because both terms use the word "defendant." I conclude that the majority takes this misstep only in an effort to import the *Shamrock Oil* rule into the CAFA context. Yet, *Shamrock Oil* did not state that the word "defendant" itself means "original defendant." Rather, it held that "*the* defendant or defendants," when adopted by Congress to replace "either party" in the earlier statute, refers to the original defendant and not a counterclaim defendant *who was also the plaintiff*. 313 U.S. at 106-08.[3]

The majority contends additionally that the language following "any defendant," which provides that a class action may be removed "without the consent of all defendants," was the basis by which § 1453(b) overruled *Martin*. To reach this conclusion, the majority finds that the text "without the con-

---

[3]Insofar as AT&T was first joined in the action by the filing of a class action complaint against it and by service of that complaint and process upon it, the action as to AT&T began with that class action complaint, in which it was joined only in its capacity as a defendant. Unlike Palisades, which commenced the collection action in state court and thus was *both a plaintiff and a counterclaim defendant*, AT&T in this case is only a defendant. Because AT&T was not also a plaintiff, the *Shamrock Oil* rule, which denied a defendant who was also a plaintiff the authority to remove, would appear not to be applicable to AT&T even apart from the amendments made by CAFA. *See Shamrock Oil*, 313 U.S. at 106-08; Fed. R. Civ. P. 13(h) note to 1966 Amendment (For purposes of applying joinder of additional parties to a counterclaim, "the party pleading the claim is to be regarded as a plaintiff and the additional parties as plaintiffs or defendants as the case may be").

sent of all defendants" somehow reads back and narrows the meaning of "any defendant." But such a reading is not grammatically supportable. The "without the consent of all defendants" language does not restrict "any defendant," but rather expands removal authority; "without the consent of all defendants" modifies the verb "may be removed" and not the noun "any defendant," thus eliminating the requirement that AT&T get "the consent of all defendants," a group that undoubtedly would include Shorts, who clearly did not want the case removed.

The error in the majority's reading of "without the consent of all defendants" becomes apparent when one takes the full clause of § 1453(b) and substitutes for "any" the Supreme Court's definition of "any," and for the parties, the names of the parties in this case. Thus, the full clause of § 1453(b) would provide that the class action "may be removed by ['one or some indiscriminately of whatever kind' of] defendant [which includes the counterclaim defendant AT&T] without the consent of all defendants [which includes the defendant Shorts]."

Shorts and the majority argue that in adopting their construction of §§ 1441(a) and 1453(b) they are following the canon that courts strictly construe federal jurisdictional statutes and that their construction, in denying AT&T removal authority, eliminates the possibility of removal by all counterclaim defendants in qualifying class actions. But in purportedly applying the canon, they overlook the fact that the canon cannot defeat the plain meaning of the statutory language. "We must not give jurisdictional statutes a more expansive interpretation than their text warrants; but it is just as important not to adopt an artificial construction that is narrower than what the text provides." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005) (citation omitted). Moreover, the canon applies with less force in this case because the justifications for the canon are not present in view of Congress' explicit purposes for enacting CAFA.

The Supreme Court first annunciated the canon of strict interpretation of federal jurisdictional statutes in *Healy v. Ratta*, 292 U.S. 263, 269-70 (1934), and reiterated it as an additional basis for its ruling in *Shamrock Oil*. In both *Shamrock Oil* and *Healy*, the Court gave two reasons for applying the canon of strict construction. First, the Court observed that successive acts of Congress had constricted federal jurisdiction, evincing a clear congressional policy to narrow federal jurisdiction. *See Shamrock Oil*, 313 U.S. at 108; *Healy*, 292 U.S. at 269-70. Second, in both *Shamrock Oil* and *Healy*, the Court stated that federalism principles required strict construction of encroachment on state court jurisdiction. *Shamrock Oil*, 313 U.S. at 108-09; *Healy*, 292 U.S. at 270.

But neither of these rationales applies with any force in this case. First, CAFA unquestionably expanded federal jurisdiction and liberalized removal authority, *see Johnson v. Advance America, Cash Advance Centers of South Carolina, Inc.*, No. 08-2186, slip op. at 5-6, 11, ___ F.3d ___ (4th Cir. Dec. 12, 2008), thus reversing the restrictive federal jurisdiction policies of Congress that both *Healy* and *Shamrock Oil* listed as the primary justification for application of the canon. Second, CAFA § 2 addresses the federalism principle, stating that Congress intended the extension of federal jurisdiction over large interstate class actions and liberalization of removal to *further* the proper balance of federalism and "restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction." CAFA § 2(b)(2), Pub. L. No. 109-2, 119 Stat. 4-5 (2005); *Johnson*, slip op. at 5-6, 11. Unlike the generalized legislative history referenced in *Shamrock Oil* and *Healy* and by the majority, this stated purpose for expanding federal jurisdiction and liberalizing removal in the CAFA context is part of the statutory text, and federal courts surely have an obligation to heed it.

The Supreme Court recently relied upon similar statutory statements of findings and purposes in rejecting an artificial

reading of the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"). In *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71 (2006), the Court interpreted the words "in connection with the purchase or sale" of securities, as contained in SLUSA. The plaintiff Dabit argued for an artificially narrow reading of the words, premised on the canon against finding federal preemption of state law. *Id.* at 84. That canon, like the canon of strict interpretation of jurisdictional statutes, derived partly from federalism concerns. But, based largely on SLUSA's purposes, as stated in SLUSA § 2, the Court unanimously gave the statute its natural reading, even though that reading had the effect of significantly preempting more state law. *Id.* at 82, 86, 87-88. Under a similar analysis, this court should give "any defendant" used in 28 U.S.C. § 1453(b) its natural reading.

I conclude that the plain language of § 1453(b) grants removal authority to AT&T in this case. Section 1453(b)'s "any defendant" language could not have overruled one rule derived from the phrase "the defendants" in § 1441(a) but not another rule derived from the same statutory language in the same statute. And when one also considers the expansive meaning given to "any" by the Supreme Court, the natural reading of the plain language of § 1453(b) unambiguously grants AT&T removal authority.

## II.   Removal Jurisdiction

Because I conclude that AT&T has removal authority, I must also determine whether the district court correctly found it had removal jurisdiction.

Section 1332(d)(2) confers original jurisdiction on district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class in which any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). The district court con-

cluded and Shorts acknowledges that the class action counter-claim in this case meets the requirements of § 1332(d)(2) insofar as it alleges the jurisdictional amount ($5 million) and diversity of citizenship (minimal diversity). Shorts contends, however, that the class action *counterclaim* in this case is not "any civil action" over which § 1332(d)(2) grants jurisdiction to district courts. She states, "A counterclaim is not a 'civil action.' Rather, a civil action arises from the plaintiff's original claims," citing Federal Rule of Civil Procedure 3 ("A civil action is commenced by filing a complaint with the court").

In state court, Palisades Collections, as a plaintiff, filed a collection claim against Shorts, as a defendant. Shorts, as a counterclaim plaintiff, then filed a class action against Palisades Collections, as a counterclaim defendant, and against AT&T, as an additional defendant joined under the West Virginia analog to Federal Rule of Civil Procedure 13(h). *See* Fed. R. Civ. P. note to 1966 Amendment ("the party pleading the claim is to be regarded as a plaintiff and the additional parties as plaintiffs or defendants as the case may be"). Thus, while Palisades Collections is the plaintiff and Shorts the defendant in the original collection action, Shorts is the class action plaintiff, representing 160,000 class plaintiffs against Palisades Collections and AT&T, as class action defendants. I conclude that Shorts' claim on behalf of 160,000 against Palisades Collections and AT&T is a class action over which CAFA confers jurisdiction.

In using the term "any civil action" in § 1332(d)(2), where Congress granted jurisdiction to the district courts in CAFA, Congress used a term of art created by the Federal Rules of Civil Procedure to merge all actions and causes of actions, whether claims for damages, injunctive relief, and other relief, and whether at law or in equity. With that merger, a plaintiff now claims, in one action, without stating separate "causes of action," claims for damages, injunctive relief and other relief. *See* Fed. R. Civ. P. 2 ("There is one form of action—the civil action").

The effect of this rule was to streamline all pleading by eliminating the numerous earlier requirements such as stating causes of action and transferring claims between law and equity. At the same time Rule 2 was adopted, the Advisory Committee provided an instructional note to the Rule: "Reference to actions at law or suits in equity *in all statutes* should now be treated as referring to the civil action prescribed in these rules." Fed. R. Civ. P. 2 note 2 (emphasis added). Congress complied with this instruction when referring in § 1332(d)(2) to a class action as a civil action.

That a class action in whatever form is a civil action was indicated early by the Supreme Court soon after it adopted the rules in 1937. As the Court stated, "The class suit was an invention of equity to enable it to proceed to a decree in suits where the number of those interested in the subject of the litigation is so great that their joinder as parties in conformity to the usual rules of procedure is impracticable." *Hansberry v. Lee*, 311 U.S. 32, 41 (1940). Thus, the class action, once a form of suit in equity, became with the enactment of Rule 2, a civil action. Indeed, the text of Rule 23, regulating class actions generally, confirms this. *See, e.g.*, Fed. R. Civ. P. 23(c)(1)(A) ("whether to certify *the action* as a class action"); *id.* 23(d) ("Conducting *the Action*"); *id.* 23(d)(1) ("in conducting *an action* under this rule"); *id.* 23(d)(1)(B)(i) ("any step in *the action*"); *id.* 23(d)(1)(B)(iii) ("otherwise come into *the action*"); *id.* 23(g)(1)(A)(ii) ("the types of claims asserted in *the action*") (emphases added throughout). As recognized in *Hansberry v. Lee* from the history of class actions, a class action is available in conformity with the usual rules of procedure as practicable, whether by complaint, counterclaim, cross-claim, or third-party claim. Indeed, Shorts herself must recognize this as she brought her class action as a counterclaim.

Shorts, of course, does not maintain that her class action counterclaim is barred simply because she brought it as a counterclaim. She undertook, in filing the class action, to seek

certification of "the action" as a class action. *See* West Virginia Rule 23(c)(1)(A) (containing the same language as the Federal Rules counterpart). That rule provides that "the court must determine by order whether to certify *the action* as a class action." This applies to Shorts' class action counterclaim. Shorts therefore cannot credibly claim that her class action counterclaim is not an action and thus a "civil action" under Rule 2.

Courts have reached a similar conclusion in the context of 28 U.S.C. § 1442, which authorizes the removal of "a civil action" against federal officers and agencies. Implementing the authority granted by § 1442, which authorizes removal of "a *civil action* . . . commenced in a State court against" a federal official or agency, courts have found removal jurisdiction when those federal officials or agencies were first brought into the case through a *third-party complaint*. *See Johnson v. Showers*, 747 F.2d 1228 (8th Cir. 1984); *IMFC Professional Servs. of Fla., Inc. v. Latin Am. Home Health, Inc.*, 676 F.2d 152 (5th Cir. 1982). While these holdings might be justified in part by the federal policy encouraging federal-court resolution of claims against federal officers and agencies, Congress has also announced a similar federal policy in CAFA in favor of federal-court resolution of class actions such as this one. Section 2(b) of CAFA states that Congress intended CAFA to "restore the intent of the framers of the United States Constitution by providing for *Federal court consideration* of interstate cases of national importance under diversity jurisdiction." (Emphasis added).

Shorts' reliance on Federal Rule of Civil Procedure 3, stating that "[a] civil action is commenced by filing a complaint with the court," is misplaced, as that rule addresses when an action commences for purposes of federal statutes of limitations and similar time-related provisions. *See* 4 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure §§ 1051, 1056 (3d ed. 2002).

As the district court concluded, the requirements for original jurisdiction set forth in 28 U.S.C. § 1332(d)(2) are fulfilled, and when combined with 28 U.S.C. § 1441(a), the district court is granted removal jurisdiction. Accordingly, I would conclude that the district court had removal jurisdiction over this interstate class action, a conclusion that is entirely consonant with Congress' purposes in enacting CAFA, expressed in the statutory text, at CAFA § 2, Pub. L. No. 109-2, 119 Stat. 4, 5 (2005).

## III

The majority correctly recognizes that Congress does not *sub silentio* disturb preexisting legal principles for removal jurisdiction and authority. *See Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 297 (4th Cir. 2008). But when new statutory language, added by CAFA, modifies preexisting language, the new language must control. *Id.* The majority, however, fails to apply the new language. Section 1453(b), by authorizing "any defendant" to remove, makes *Shamrock Oil* inapplicable in the CAFA context, thus giving AT&T removal authority. And the language of §§ 1332(d)(2) and 1441 gives the district court removal jurisdiction. Accordingly, I would reverse the district court's remand order to let this interstate class action proceed in federal court, as CAFA clearly provides.